**UNION STATE BANK OF CLINTON, Respondent,**

v.

**Sharon DOLAN, Appellant.**

**No. WD 37548.**

Missouri Court of Appeals,
Western District.

Aug. 12, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 25, 1986.

Application to Transfer Denied
Nov. 18, 1986.

James S. Formby and Michael W. Walker, of counsel, Kansas City, for appellant.

Robert L. Cox, of counsel, Paogue, Wall, Eshelman & Cox, Clinton, for respondent.

Before PRITCHARD, P.J., and DIXON and TURNAGE, JJ.

PRITCHARD, Presiding Judge.

This is a case of replevin of certain personal property pledged as a security interest on a debt (Count I); and attachment in aid of a suit on a promissory note (Count II). Trial was to the court which, after lengthy proceedings, granted respondent's motion for summary judgment upon both counts, and entered judgment for it in the amount of $53,603.43, principal and interest on the debt which remained after disposition of other collateral had been credited, for $3,380 interest to the date of judgment (August 1, 1985), $2,500 attorneys' fee, and for costs.

■ During oral argument it was questioned as to whether the notice of appeal was sufficient to bring the issues encompassed in a final judgment to this court. What happened was this: On August 31, 1984, upon motion and supporting affidavit, a summary judgment was granted to respondent on Count II (on the promissory note) for $103,428.92, plus 13% contractual interest from May 15, 1984, $750 attorney's fees, and for costs. A new trial, however,

was granted on that summary judgment. Appellant's motion for new trial on the summary judgment was sustained on October 2, 1984. Answers were filed as to both Counts I and II. But because appellant had failed to attend depositions, the sanction of striking her pleadings was imposed, and a new summary judgment was entered against her on August 1, 1985. The notice of appeal lists that judgment as one appealed from, and the notice was filed on August 28, 1985, within 30 days after entry of judgment. Rule 81.05. The notice of appeal was sufficient and timely so as to bring the issues before this court.

■ Appellant's first point is that the trial court erred in finding that she had not been deprived of her property without due process of law because her horse had been replevined without prior or contemporaneous service of the notice required by Rule 99.05. Cited is *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and following it, *State ex rel. Williams v. Berrey*, 492 S.W.2d 731 (Mo. banc 1973). Those cases did hold that there was a right to a notice of the right to a hearing and the right to file a delivery bond by defendant prior to seizure. But the Fuentes case was modified by *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which approved (against a due process challenge) a Louisiana prejudgment procedure upon an ex parte application supported by an affidavit showing specific facts of plaintiff's entitlement to possession. It was noted in *State ex rel. Tallen v. Marsh*, 633 S.W.2d 458, 461 (Mo.App. 1982), that the Supreme Court of Missouri, obviously meaning to adopt the standards of the *Mitchell* case, supra, adopted Rule 99 in 1977. That rule and its subparts provide the procedure for a prejudgment seizure in replevin and supplies the due process requirements required by the *Mitchell* case. The petition in replevin pleads appellant's execution of a promissory note which was in default, and a security agreement. The affidavit in replevin first states "That plaintiff is lawfully entitled to possession of certain livestock". This is a conclusion similar to that condemned in the *Tallen* case, supra, but attached is a copy of the note and the security agreement showing the collateral owned by the debtor to be "all livestock now owned or hereafter acquired including all additions". That is a sufficient description under § 400.9–110, RSMo 1978. These documents supply the deficiency in the affidavit as to facts showing respondent's entitlement to possession. The affidavit then states that the livestock was wrongfully detained by appellant; its value was $20,000; it has not been seized under any process; and respondent was in danger of losing the livestock unless it is taken out of the possession of appellant. The sufficiency of the affidavit with the attachments is not in this point questioned by appellant (see Point II below). Also attached to the order of delivery in replevin is a copy of a portion of Rule 99, including Rule 99.05 as to notice to appellant of her right to file a delivery bond and to request a hearing to determine respondent's right to possession of the property. The sufficiency of that means of notice is likewise not questioned. Appellant never did file a redelivery bond or in the alternative to request a hearing on the right of possession under Rule 99.09. An examination of the procedures here used, in the light of the requirements of Rule 99, requires that appellant's first point be ruled against her.

■ In Point II, appellant contends that the trial court erred in ruling that she had not been deprived of her property without due process of law, because (first) the affidavit in replevin does not state sufficient evidentiary facts to serve as a basis for the issuance of an order of delivery. That matter is ruled above in Point I, in that the affidavit and accompanying documents adequately show compliance with Rule 99.03. As to the second contention, which is that the trial court did not make specific findings of fact with respect to those alleged in the affidavit which could serve as a basis for entry of the order of delivery. There is no requirement that the court make *specific* finding of facts stated in the affidavit under Rule 99.04. Here, the order of deliv-

ery in replevin recites, "The Court has found the facts stated in the affidavit to show the plaintiff has the right to immediate possession of the personal property described therein." That is sufficient. Point II is overruled.

■ Respondent's original replevin and attachment bonds were signed only by itself by its vice president, without a surety as required by Rule 99.06, but the same were approved for some reason by the trial court. At any rate, by some means, the matter was brought to the attention of the court, and on November 26, 1984, it ordered that appellant's motions to quash attachment and garnishment in aid thereof, and to quash order of delivery in replevin be overruled conditioned upon respondent filing new bonds within 10 days. Respondent did not comply with the new order of filing of replevin and attachment bonds under Rules 99.06 and 85.08, but instead deposited a $20,000 certificate of deposit on the attachment bond issued by the Citizens State Bank of Calhoun, and a $1,000 certificate of deposit on the same bank for the replevin bond with the clerk of the court. These two bonds were approved by the trial court on December 5, 1984. [These certificates of deposit, nor any facsimilies thereof, are not filed with this court. During oral argument, however, it was stated and not contested that they were payable to respondent and were endorsed by it to the clerk of the circuit court.] In Point III, appellant contends that the trial court erred in granting respondent 10 additional days to file a new replevin bond because the property had already been replevined, and therefore any defects in the bond at that time were jurisdictional. It is argued that the granting of additional time within which to cure an insufficient bond may be accomplished only prior to seizure. Under Rule 99.06, the purpose of the delivery bond is to prosecute the action without delay, for the return of the property to defendant, or in default thereof, to pay all damages for injuries to the property and for its taking and detention and for all costs. All those damages would not be awardable to defendant until final judg-

ment, after trial as to right of possession. Rule 99.11 authorizes the court to order a party to furnish new delivery or redelivery bonds if it finds they are insufficient. Obviously, this can and must be done at some time during the pendency of the action, and no time limit is set within the Rule. If this were a jurisdictional matter, there would be no reason for Rule 99.11, the purpose of which is to protect a defendant with a sufficient replevin bond by a curative remedy.

Although not included in the heading of Point III, it is argued thereunder that the certificates of deposit do not comply with the surety requirements of Rule 99.06. There is nothing in the replevin rules that prohibits the filing of a cash bond, in approved amount, in lieu of a surety bond. Certificates of deposits are in practical effect an equivalent of cash. They create an obligation to pay them on the bank at maturity on presentment at that time or thereafter, which obligation has no definite termination date. No prejudice to appellant is apparent because of the use of certificates of deposit rather than a surety bond. Point III is overruled.

■ In Point IV, appellant attacks the validity of the writ of attachment issued in aid of suit, which was served upon the Superintendent of Insurance by the Sheriff of Cole County, Missouri, on June 15, 1984. It attached any funds due appellant from the American Home Insurance Company, and was apparently for $50,000 due on an insurance policy because of the death of a horse which was insured thereunder. On the same day, the Superintendent mailed the writ to the corporate secretary of American Home.

A notice of writ of attachment and garnishment, directed to appellant, was served upon her on June 22, 1984. The notice advised her of right to regain possession (Rule 85.07) of the attached property or debt by filing an approved bond (Rule 85.-09), and her right to file a written request for a hearing to determine if the attachment should be dissolved, the hearing to be

within 10 days of the request (Rule 85.13). Appellant never did make a request for such a hearing.

Appellant makes the same argument as under Point I on the replevin—that she was not served with notice or summons neither prior to nor contemporaneously with the attachment of her funds on deposit with American Home. Appellant relies upon the language of Rule 85.07 to support her argument: "When a writ of attachment is issued the writ of attachment, together with a written notice, shall be served on the owner of the property and a written notice, with a copy of the writ of attachment, shall be served on a nonowner in possession at the time of levy. * * * " (The written notice shall advise the owner and nonowner of their right to file a bond, and the owner's right to request a hearing.) Apparently, appellant contends that this language requires that she, as well as American Home, was entitled to written notice at the time of the levy against the latter, but a fair reading of the Rule requires that the service upon the nonowner be treated differently, because of its possession of the property sought to be attached. It is enough under the analogous *Mitchell* case and the *Tallen* case, supra, under Point I, that appellant be given notice after seizure or attachment, together with a right to a hearing thereafter. That is a sufficient due process provision, and the failure to serve notice prior or contemporaneously is not a jurisdictional matter as to appellant. Appellant's cited case of *State ex rel. Eagle Bank & Trust v. Corcoran*, 659 S.W.2d 775 (Mo. banc 1983), does not aid her. There, the *garnishee* sought and obtained a writ of prohibition against answering interrogatories because the plaintiff in the underlying suit had not complied with the garnishment Rule 90, and the statute, by either seeking an immediate order of delivery or service of interrogatories within six days after return date of the writ. That case offers no protection to a debtor such as appellant, but is only applicable to garnishees. Point IV is overruled.

■ Point V contends error because the writ of attachment was signed by the Clerk of the Court, said to be a violation of Rule 85.04 which requires a judicial determination prior to issuance of the writ, and Rule 85.08 requires attachment bonds be approved by the Court.

The affidavit in attachment recites that it seeks to attach only property sufficient to satisfy $50,000, and attachment is authorized because defendant has fraudulently concealed, removed or disposed of same, so as to hinder and delay her creditors. [Grounds for attachment under § 521.010, RSMo 1978.] It was filed before the trial court on the same date as the affidavit in replevin, so surely the matter was before the court for consideration. Furthermore, although the bond was signed only by respondent by its vice president, without a surety, it was first approved by the Circuit Clerk on the date of its filing, June 15, 1984. However, the bond was later approved by the court on July 17, 1984, which was the date after the *true* return date of the writ. [The writ of attachment directed the sheriff to make return as to how he executed it on June 15, 1984, and was obviously a clerical error because the summons to garnishee, American Home, directed it to appear and answer interrogatories on July 16, 1984. Interrogatories to garnishee were filed on July 17, 1984, which was within six days under Rule 90.13.]

■ There is no requirement that the writ of attachment be signed by the court. Rather, the form contained in Rule 85.05 clearly provides that it may be signed by the Clerk. Although the first bond was approved by the Clerk, then by the Court, it was clearly insufficient as there was no surety on it. That matter was corrected later on December 5, 1984, when a new bond was approved by the court in the amount of $20,000, with the certificate of deposit, referred to above, was posted as security and deposited with the clerk of the court. No prejudice could have resulted to appellant because the bond is merely to insure that the plaintiff-claimant shall refund all sums of money to the owner and to

pay all damages and costs to the owner, etc., under Rule 85.08. The garnishee, American Home, first denied any amount then due appellant because the insurance claim was then under investigation, but then by further answers, stated that it held $50,000 insurance proceeds of appellant and prayed for an order allowing it to pay that amount into the registry of the court and be discharged as garnishee. On final judgment, that amount was ordered paid into court and disbursed to respondent. All of the events which transpired show that appellant was protected throughout the pendency of the proceedings. Point V is overruled.

In Point VI, appellant says the trial court erred in granting respondent 10 additional days on November 26, 1984, within which to file a new attachment bond. As noted, the previous bond was insufficient because there was no surety on it. Rule 85.11 provides that if the court finds that any bond is insufficient, it may order a new bond be furnished. Appellant argues that such a new bond to cure an insufficient bond may be filed only prior to seizure. The rule does not set such a time limit. The court was within its authority to order the filing of a new bond, and upon failure to do so, the attachment would be dissolved. The new bond was filed and approved. As noted, the purpose of the bond is to protect the defendant if the plaintiff shall not succeed on final judgment. The matter of filing of a new bond is not jurisdictional in the sense that it must be filed prior to seizure. The defect in the bond may be cured under Rule 85.11. Point VI is overruled.

In Point VII, appellant contends that the filing of interrogatories more than six days after the return date of the writ caused the court to lose jurisdiction because the filing of interrogatories was made 32 days after the return date of the writ. As noted, and as compared to the summons to garnishee, the return date on the writ, being the same day as it was issued, June 15, 1984, was an error. The true return date was July 15, 1984, and the interrogatories were filed within six days thereafter. Point VII is overruled.

Appellant claims in Point VIII that the service of process upon her of June 22, 1984, by the Sheriff of Henry County, Missouri, was procured by fraud, trickery, deceit or misrepresentation, in that her appearance at the sheriff's office was directly caused by the illegal seizure of her chattel (the horse) and by the overt threat of the sheriff of criminal prosecution. The testimony on this issue came in from one Burl Kelso, Jr., who discovered that appellant's horse was missing from its pasture. He went to the sheriff's office to report its theft. He testified that the sheriff told him (purely hearsay, objected to on that ground) that appellant should come to his office immediately because "the bank was threatening criminal charges against her" or that "the bank was considering criminal charges for disposing of mortgaged property and for double mortgaging property." As double hearsay, appellant testified that she had been told that the bank was trying to get hold of her for purpose of criminal charges, and that Kelso had talked to the sheriff and he said it was imperative that she come down there to pick up the papers. There was no other evidence as to how service of process was accomplished. On November 26, 1984, Judge Roberts (before he was disqualified) found that the service of process was not procured by fraud, trickery, deceit, or misrepresentation upon appellant, and that there was a complete failure of proof on that issue by appellant. The trial court could reject appellant's version of what happened, considering especially the hearsay nature of the testimony. This court need not go further. Point VIII is overruled.

In her last Point IX, appellant contends that the trial court erred in striking her pleadings because of her failure to attend her deposition. A first notice to take appellant's deposition was mailed to her counsel on December 6, 1984, specifying December 20, 1984, at 10:00 a.m. as the date and time for the giving of her deposition. A second notice was mailed to appel-

lant's counsel on December 20, 1984, setting the date for her deposition for January 2, 1985. The place for the taking of the depositions was at the office of respondent's counsel in Clinton, Missouri. Neither appellant nor her counsel appeared on either deposition date. Respondent filed a motion for sanctions for appellant's failure to appear for the taking of her deposition, to which motion she filed no response. In its judgment entry of August 1, 1985, the court imposed the sanction of striking appellant's answer which was filed December 14, 1984, citing Rule 61.01(d)(2) as the just remedy therefor for failure to attend depositions.

Appellant argues that there was no order issued by the court for her to attend her deposition, and therefore sanctions cannot be imposed. Cited is *Venker v. Hyler*, 352 S.W.2d 590 (Mo.1962). That case was decided before the adoption of Rule 61 in 1975, prior to its provisions for sanctions, and under old Rule 57.20, which had no provision for sanctions merely for failure to attend depositions without a court order. Rules 61.01(d) and 61.01(f) clearly provide for such sanctions. Appellant offered no evidence of excuse or justification for her failure to appear for depositions. See *Kohn by Curtis v. Kohn*, 672 S.W.2d 174 (Mo.App.1984), where the court held it to be unjust not to allow a putative father to explain his absence from a scheduled deposition, where he may have had a good and sufficient reason for nonappearance. No facts are shown here which would relieve appellant of the imposition of sanctions. See and compare *Sonderman v. Maret*, 694 S.W.2d 864, 867[3] (Mo.App.1985). Point IX is overruled.

As is apparent throughout this opinion, respondent failed to follow the plain directories of the rules as to procedure. That failure is not to be approved. The derelictions, however, especially with the posting of sufficient replevin and attachment bonds, were correctible and were corrected by the trial court, so no prejudice to appellant ensued.

The judgment is affirmed.

All concur.