STATE ex rel. ARKANSAS POWER &
LIGHT COMPANY, Appellant,

v.

MISSOURI PUBLIC SERVICE
COMMISSION, Respondent.

No. WD 38897.

Missouri Court of Appeals,
Western District.

July 21, 1987.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied Sept. 1, 1987.

Application to Transfer Denied
Oct. 13, 1987.

James C. Swearengen, Jefferson City, for appellant.

Paul H. Gardner, Jefferson City, for respondent.

Robin Edward Fulton, Fredericktown, for intervenor.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

In this appeal by a utility company from an order involving a rate increase, the primary issue presented is whether the regulatory body may, as sanctions for enforcement of discovery, Rule 61.01, strike crucial evidence of the applicant.

Arkansas Power & Light Company (AP & L), a wholesale and retail electric supplier, has a service area in eight southeastern Missouri counties. AP & L is one of four operating electrical companies wholly owned by a holding company, Middle South Utilities (MSU).

AP & L, based on revenue requirements, under Chapter 393, RSMo 1986 wanted to raise Missouri tariffs by approximately $5,001,000 to recover increases in its operating costs. It also sought to recover an additional $12,177,000 of Missouri costs resulting from a decision of the Federal Energy Regulatory Commission (FERC) which allocated to AP & L the costs of a nuclear generating station in the MSU system. While AP & L asked for a total of $17,178,000 in revenues from Missouri customers, the Public Service Commission (Commission or PSC) staff proposed a re-

duction from present revenues of $7,815,-196 and did not allow any of the $12,177,-000 request for the nuclear costs.

The PSC found AP & L was not entitled to an increase of its Missouri revenues, but was subject to a decrease of $3,030,979. The PSC did find $9,033,000 was owed to AP & L because of the federal action on the Grand Gulf nuclear plant. The result was a net increase to AP & L of $6,002,021. AP & L appealed the PSC decision which was affirmed by the Cole County Circuit Court. Several lead mining companies, as intervenors, support the PSC decision.

As appellant AP & L takes issue with the PSC's imposition of a sanction which excluded part of AP & L's evidence, and with the PSC's methodology in affixing costs and expenses. The facts from the 2000 pages each of transcript and legal file will be summarized in the appropriate points.

## I.

At the heart of AP & L's first point is the Commission's striking, and therefore failing to take into account, AP & L's evidence as to fuel costs. Summarized and reduced to English for the benefit of the reader, AP & L produces electricity from coal, oil and nuclear processes. AP & L has negotiated advantageous contracts for the supply and transportation of coal. To determine the fuel cost of electricity produced, AP & L contracted with a firm to set up a computer analysis or model. The manual of this process is called "promod." AP & L claimed the promod manual and the coal invoices were highly sensitive and should not be open to scrutiny by those not connected with the PSC.

The following is a timetable of relevant events:

**1985**

| | |
|---|---|
| June 7 | AP&L submitted to Commission a request for an increase in tariffs. |
| July 3 | PSC issues suspension order and sets hearing for 1/27/86. |
| October 29 | PSC issues a Data Request (DR) to AP&L for promod manual. (A DR is equivalent to an interrogatory). |
| November 17 | PSC sends a DR on the coal invoices. |
| December 3 | PSC grants staff extension on hearings until 2/24/86; Staff's case to be filed 1/23 and 1/26/86. |

**1985**

| | |
|---|---|
| December 13 | With regard to promod, AP&L later asks for protective order. |
| December 15 | With regard to coal invoices, AP&L asks for a confidentiality agreement or a protective order. |

**1986**

| | |
|---|---|
| January 2 | Commission order for AP&L to produce promod. |
| January 8 | AP&L says promod confidential and belongs to a third party, staff also again requests coal invoices. |
| January 22 | Staff asks for a hearing on AP&L's failure to produce promod. |
| January 27 | Commission orders production of coal invoices and promod, but decides they are trade secrets. |
| February 4 | Commission now grants the protective order for invoices and promod and dismisses staff complaints that AP&L failed to produce. The staff signs nondisclosure agreements, and somewhere between February 6 and February 20, promod and invoices given to staff by AP&L. |

The Commission's order is somewhat confusing. As to promod, the Commission excluded the witness testimony and the manual because "the company cannot be allowed to maintain its burden of proof by the use of secret or unrevealed information or delay producing the information so that it cannot be utilized or verified by the other parties, particularly the Commission Staff." This order was in response to an earlier staff motion to strike or exclude. After the Commission sustained staff's motion to exclude promod, the AP & L witness attempted to testify as to his calculations based on non-promod methods, to which the Commission made an evidentiary ruling against AP & L. Due to the disposition of the order to strike, that subsequent ruling will not be addressed. The ruling in the final order excludes the coal invoices based on the delay in AP & L providing them.

Needless to say exclusion of promod and the coal invoices left the case with evidence which did not present a true or accurate picture of AP & L's expenses. The Commission, without the higher costs of coal produced electricity, considered only the lower cost of the less utilized nuclear method. This first issue boils down to whether the PSC can exclude the described evidence

as a sanction against AP & L. Rule 61.01. A determination of the issue is based on these facts and legal propositions: (a) AP & L had the burden of proving its case; (b) Because of the time constraints, the Commission had to reach a decision promptly, even though the staff may not have had enough time to analyze the information after its receipt; (c) the Commission ultimately upheld AP & L's position that the evidence was secret, proprietary and subject to protection and confidentiality; and (d) the ratemaking process is supposed to involve fair play and a full hearing, *State ex rel. Fischer v. Public Service Commission,* 645 S.W.2d 39, 43 (Mo.App.1982), *cert. denied* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91; and a just and reasonable utility rate is a bilateral proposition that it be just and reasonable both as to the utility and the customer. *State ex rel. Valley Sewage Co. v. Public Service Commission,* 515 S.W.2d 845, 850 (Mo.App.1974).

There is no presumption in favor of the Commission's nor the circuit court's determination of legal issues. *Love 1979 Partners v. Public Service Commission,* 715 S.W.2d 482, 486 (Mo. banc 1986).

This court agrees that a time limitation was involved and the Commission staff was entitled to a meaningful review of the figures provided by the requester of a rate increase. It seems though, the stance of AP & L in not quickly complying with discovery was completely upheld when the Commission granted AP & L all the protective relief it requested.

The evidence subject of this point was highly relevant and material, and critical to AP & L's case—the remaining question being, was the sanction too harsh under these circumstances. This court holds the Commission erred in excluding the subject evidence. To consider the case without the promod information and the cost (coal) which generated of some 80% of AP & L's electricity, denied the applicant a meaningful hearing, and resulted in an order which distorted the true costs.

The PSC may adopt rules as to hearings and investigations. § 386.410, RSMo 1986. Commission Rule 4 CSR 240–2.090 allows the use of written interrogatories under the same conditions as in civil cases. *State ex rel. Southwestern Bell Telephone Company v. Public Service Commission,* 645 S.W.2d 44, 49–50 (Mo.App.1983). Although proprietary interests may be protected in those kinds of cases, they cannot be unilaterally used to allow the utility to fail to disclose and still carry its burden of proof. *State ex rel. Utility Consumers Council v. Public Service Commission,* 562 S.W.2d 688, 694 (Mo.App.1978), *cert. denied* 394 U.S. 866, 99 S.Ct. 192, 58 L.Ed.2d 177.

Trial courts are allowed wide discretion in meting out sanctions under Rule 61.01. Appellate decisions read of "repeated failures to comply," *Baughn v. Rapidways Truck Leasing,* 698 S.W.2d 618, 620 (Mo.App.1985); repeated failures to appear, *Kingsley v. Kingsley,* 716 S.W.2d 257, 260 (Mo. banc 1986); no excuse or failure to appear at depositions, *Union State Bank of Clinton v. Dolan,* 718 S.W.2d 522, 528 (Mo.App.1986), and of the drastic remedy of dismissal with prejudice where the parties "inertia flouted the court's authority," *Wipke v. Louisiana Farm Supply, Inc.,* 622 S.W.2d 772, 774 (Mo.App.1981).

This court holds the PSC may impose sanctions pursuant to Rule 61.01. But in this case the striking of admissible and vitally necessary evidence as a sanction amounts to an abuse. *Foster v. Kohm,* 661 S.W.2d 628, 632 (Mo.App.1983). "Elimination of this important evidence from consideration completely destroyed appellants' case and permitted what amounted to a default judgment against them." *Id.* As was written in *Foster,* this court is sympathetic to the PSC's need, as the trial court, to expeditiously control its docket. But here, as in *Foster,* there "was no bad faith, willfulness or contumacious conduct on the part of appellants to justify the elimination of appellants' key piece of documentary evidence and the expert testimony relating to it. The sanctions were unduly severe and unwarranted under the circumstances." *Id.* The sanction here was unduly harsh and precluded the objective of the hearing to produce necessary facts. *Houchins v. Houchins,* 727 S.W.2d 181,

184 (Mo.App.1987). The exclusion runs counter to the purpose of the regulatory system to be fair to both sides. All parties have a common interest in arriving at just and reasonable rates. The interest is not well served by exclusion of relevant evidence. *Central Vermont Public Service Corporation For a 6.23% Increase in Rates,* 141 Vt. 284, 449 A.2d 904, 910 (Vt. 1982); § 386.510, RSMo 1986 provides:

> In case the order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and rejected, and enter a new order based upon the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action.

Although AP & L's request to keep confidential was completely exonerated by the PSC's ultimate ruling, the court believes it should have more quickly attempted to bring a determination to a head. Rule 61.-01(a) directs the party from whom discovery is sought to apply for a protective order under Rule 56.01(c). In PSC hearings, where discovery by the staff is sought as to trade secrets, confidential information, or commercial information, the utility should promptly apply for a necessary order under 56.01(c)(7).

AP & L's first point is sustained, and the cause is remanded with directions for the PSC to admit and receive the evidence excluded by sanctions pertaining to promod and the coal invoices, and to then make a new order. *State ex rel. Detroit-Chicago Motor Bus Co., Inc. v. Public Service Commission,* 324 Mo. 270, 23 S.W.2d 115, 117 (1929); *State ex rel. Fee Fee Trunk Sewer, Inc. v. Public Service Commission,* 522 S.W.2d 67, 72 (Mo.App.1975).

\* \* \* \* \* \*

Two other points were raised by AP & L which will be involved in the subsequent hearing called for in this opinion. Those points will now be addressed.

## II.

■ AP & L disputes the Commission's determination of its' revenues. AP & L asserts the Commission overstated AP & L's projected revenues which had the effect of depressing the amount of any rate increase. The Commission had previously used the method used in this case, the "forecasted peak times load factor," to estimate revenues. Other than AP & L's assessment that this method is arbitrary, it has shown nothing on this appeal which could support its criticism of this part of the order. The mere fact AP & L's methodology would be more favorable to it than that chosen by the Commission will not, alone, amount to reversible error. On the record there was the testimony of two accountants and an economist supporting the methodology adopted by the PSC as to estimating future AP & L revenues. *State ex rel. Missouri Public Service Co. v. Fraas,* 627 S.W.2d 882, 886 (Mo.App.1981). On this record the appellant has not demonstrated the PSC's order in this respect has been unlawful or unreasonable. *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission,* 606 S.W.2d 222, 227 (Mo.App.1980).

## III.

AP & L's last point proclaims error in the PSC's use in this case of the single coincidental peak method of determining the utility's cost of producing electricity to Missouri customers.

Where a utility such as AP & L operates in several states, it must be determined in the fixing of rates for each state what is the correct amount allocated to that state for the production costs. Two such methods are the "single coincidental peak" method (1CP), and the "average and peak" method (AP).

■ 1CP is appropriate where there is one identifiable high demand spike and a ratio is determined by dividing the total demand of Missouri customers at the single highest hour of the year by the total demand of the entire system (all states) at the highest hour.

The AP method allocates the cost of production on hourly intervals figuring the average cost over an entire year.

In 1982 hearings involving AP & L, the PSC used the AP method, and in 1985 the PSC used AP over 1CP in a rate case involving another utility. AP & L asserts error in the present use of the 1CP method of determining the costs of production of supplying power to Missouri customers after the commission had earlier eschewed that method in favor of AP. AP & L says the PSC was arbitrary in abandoning the AP method which it had previously approved, for use of 1CP. The Commission said 1CP was appropriate due to the facts and the "potential impact" on customers in the present rate request.

In essence the PSC said use of the AP method in this case would shift to the Missouri customers, who comprise about 5% of the company's customers, costs of unneeded plant and determined the 1CP method was appropriate for the jurisdictional allocation. There was substantial expert testimony supporting adoption of the 1CP method for apportioning allocation between jurisdictions, as opposed to allocations between classes of customers. The order alluded to the lack of all necessary data from AP & L to even use the AP method, but it is unnecessary to now analyze that point. In the context of this appeal it suffices to say the PSC can use a new equation or change methods from case to case depending on the facts. There is no *per se* requirement the Commission must use the same formula on successive applications by the same company. There was evidence the 1CP method was appropriate here. The Commission is not bound to a single formula, and where there is competent and substantial evidence to support the methodology used, a reviewing court is in no position to reverse.

The PSC's orders are presumed correct and the challenger has a heavy burden to prove otherwise. *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission*, 585 S.W.2d

41, 47 (Mo. banc 1979). A reversal is warranted if the Commission action was arbitrary, capricious or without reasonable basis. *State ex rel. Fee Fee Trunk Sewer Inc. v. Public Service Commission of Missouri*, 550 S.W.2d 945, 946 (Mo.App.1977).

It is not the methodology, but the impact of the rate order which counts. *State ex rel. Associated Natural Gas Company v. Public Service Commission of Missouri*, 706 S.W.2d 870, 879 (Mo.App.1985). If the total effect of the rate order cannot be said to be unjust or unreasonable, judicial inquiry is at an end. *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944). No methodology being statutorily prescribed, and ratemaking being an inexact science, requiring use of different formulas, the Commission may use different approaches in different cases. *Associated Natural Gas, supra*, at 880.

The judgment of the circuit court affirming the PSC's order is reversed. The cause is remanded with directions to the PSC to hear the evidence excluded by sanctions, and to then issue a new order.

All concur.