**STATE of Missouri, ex rel. Mary MALAN, Relator,**

v.

**The Honorable Raymond T. HUESEMANN, Respondent.**

No. WD 53338.

Missouri Court of Appeals, Western District.

April 8, 1997.

William E. Simmons, Clinton, for Relator.

Steven W. White, Independence, for Respondent.

Before SMART, P.J., and BERREY and LAURA DENVIR STITH, JJ.

## ORIGINAL PROCEEDING IN PROHIBITION

LAURA DENVIR STITH, JUDGE.

Lois Ruth Kalberloh, the plaintiff below, filed suit against Relator Mary Malan, a registered pharmacist practicing in Clinton, Missouri, alleging pharmaceutical malpractice for incorrectly filling her prescription. As evidence, Ms. Kalberloh sought to admit joint stipulations of fact and consent orders in which Ms. Malan had previously settled two complaints filed by the Missouri Board of Pharmacy. The joint stipulations admitted, solely for the purpose of those settlements, that on previous occasions Ms. Malan had filled prescriptions by compounding bulk chemicals and had incorrectly filled prescriptions for particular customers. The trial court ruled that Ms. Malan was estopped to deny her liability for prior instances of incorrectly filling prescriptions as set forth in the consent orders and that large portions of the text of the settlements could be admitted and read to the jury. Ms. Malan then filed a petition for a writ of prohibition with this Court. We issued our preliminary writ. We now make our writ absolute.

## I. WRIT OF PROHIBITION AS APPROPRIATE REMEDY

A writ of prohibition is the proper remedy to prevent a lower court from acting beyond its jurisdiction. *State ex rel. Coyle v. O'Toole*, 914 S.W.2d 871, 872 (Mo.App.1996). It is not a substitute for a direct appeal, and will issue only where there is lack of jurisdiction and lack of an adequate remedy by appeal. *State ex rel. Riederer v. Mason*, 810 S.W.2d 541, 543 (Mo.App.1991). Nonetheless, "[w]here unnecessary, inconvenient, and expensive litigation can be avoided, prohibition is the appropriate remedy." *State ex rel. Anheuser–Busch, Inc. v. Mummert*, 887 S.W.2d 736, 737 (Mo.App.1994). A writ of prohibition is available to prevent disclosure of privileged material because erroneous disclosure cannot be repaired on appeal. *State ex rel. Atchison, T. and S.F. Ry. v. O'Malley*, 898 S.W.2d 550, 552 (Mo. banc 1995).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Relator Mary Malan is a registered pharmacist, practicing in Clinton, Missouri. In September 1990, the Missouri Board of Pharmacy seized Ms. Malan's bulk chemicals because it believed that her process of compounding drugs from them was illegal. On October 19, 1990, the Board also informed Ms. Malan that it was not renewing her pharmacy permit. Ms. Malan petitioned the Administrative Hearing Commission (AHC) for relief. The AHC subsequently ordered the Board to reinstate Ms. Malan's permit.

On February 4, 1991, the Board filed a 16-count Expedited Complaint against Ms. Malan with the AHC, alleging that she had compounded drugs from bulk chemicals and had made dispensing errors or illegal substitutions that endangered the health of her customers. The Board requested an expedited hearing and asked the AHC to immediately suspend Ms. Malan's license until a full hearing could be held to determine whether cause existed to discipline her.

The AHC held a hearing on March 20, 1991. In its order, the AHC denied the Board's request to suspend Ms. Malan's license and dismissed the Board's complaint. It found that most of Ms. Malan's compounding was not illegal, and in those instances that may have been illegal there was no clear and present danger to public health or safety because Ms. Malan testified that she had stopped this compounding. The AHC also noted that the Board's seizure of her bulk chemicals was done without authority, and the Board's five-month delay between the seizure and filing the complaint indicated there was not a present danger.

Regarding the alleged dispensing errors, the AHC found that Ms. Malan had a low error rating and the instances were mere mistakes. Although there was evidence of one serious incident, the AHC did not believe this warranted suspension of her license. The AHC did state, however, that it would have been willing to restrict her from dispensing anything other than acceptable commercial products if the Board had requested this relief.

Thereafter, the Board refiled its complaint with the AHC seeking a full hearing. Before a hearing was held, however, the parties settled the dispute by entering into a "Joint Stipulation of Facts, Waiver of Hearings Before the Administrative Hearing Commission and State Board of Pharmacy, and Consent Order with Joint Proposed Findings of Fact and Conclusions of Law" on October 10, 1991. Ms. Malan suggests in this Court that she entered into the settlement because defense of the Board's prior unsuccessful actions against her had taken all of her funds. In any event, the Joint Stipulation stated in numerous places it was solely for the purposes of settlement that Ms. Malan did not contest the Board's allegations. The Joint Proposed Findings of Fact similarly recited that, on specified occasions, Ms. Malan agreed, again for settlement purposes only, that she had filled prescriptions by compounding bulk chemicals and had substituted drugs other than those prescribed.

Pursuant to the terms of the settlement, Ms. Malan's pharmacist's license and pharmacy permit were placed on probation for five years beginning on November 6, 1991. Based on this document, the AHC entered a Consent Order acknowledging that the parties had entered into a settlement. That order stated, "Further, upon review of the facts of the joint stipulation, *agreed to by Respondent [Ms. Malan] and therefore found to be true,* it is the independent finding of this Commission that cause exists for Petitioner [Board of Pharmacy] to take disciplinary action against Respondent's pharmacist license under Section 338.055.2, RSMo 1986." (emphasis added).

On May 12, 1995, the Pharmacy Board issued a Complaint of Violation of Disciplinary Order against Ms. Malan alleging she had incorrectly filled prescriptions and made improper substitutions. This second Board Complaint was not filed with the AHC, however. Instead, on August 4, 1995, Ms. Malan and the Board again entered into a settlement in the form of a Joint Stipulation extending Ms. Malan's probation. The Findings of Fact in this Joint Stipulation stated that Ms. Malan agreed, again solely for the purposes of settlement and not as an admis-

sion of liability, that she incorrectly filled prescriptions and substituted drugs for a person designated as "Patient I." The Joint Stipulation also recounted incidents involving other patients. The Executive Director of the Board executed a Consent Order, purporting to find that the facts the Board had itself alleged, and which were stipulated to by Ms. Malan for purposes of settlement only, were true and that Ms. Malan was subject to discipline. No hearing was held on this order and neither it nor the Joint Stipulation on which it was based were ever filed with the AHC. The AHC issued no order at all in regard to the 1995 complaint.

Also on May 12, 1995, Lois Ruth Kalberloh, the person identified as "Patient I" in the 1995 Joint Stipulation, filed a Petition against Ms. Malan alleging pharmaceutical malpractice. Ms. Kalberloh alleged that Ms. Malan filled Ms. Kalberloh's prescription for Eldepryl with the drug Prednisone. In her amended Petition, Ms. Kalberloh made a claim for punitive damages, alleging that Ms. Malan had repeatedly demonstrated willful, wanton, and malicious conduct in her practice as a pharmacist. As support, Ms. Kalberloh included as exhibits copies of the 1991 and 1995 Joint Stipulations between Ms. Malan and the Board. She sought to read portions of these stipulations to the jury.

Ms. Malan filed a motion to strike the Joint Stipulations and a motion in limine to exclude their use at trial. Judge Raymond T. Huesemann ruled that portions of the settlement agreements dealing with misfilling of other prescriptions were admissible and could be read to the jury, and that the fact they are settlements went only to their weight, not to their admissibility. He further ruled that Ms. Malan was collaterally estopped to deny the 1991 and 1995 consent orders against her, based on these settlements, stating:

> The issue of whether the defendant [Ms. Malan] was guilty of the prior mis-fillings mentioned in the multi-count complaint brought before the AHC may not be relitigated by the defendant in these proceedings in the Circuit Court. That is, if deemed relevant and otherwise admissible [sic] at the up-coming trial herein, the

defendant will be estopped to deny her guilt as set forth in the Consent Orders of November 6, 1991, and August 9, 1995. While the defendant stipulated that the factual allegations of the complaint of the Missouri Board of Pharmacy were true, "for the purpose of settling this dispute, and not as an admission of guilt", the AHC made an independent, unappealed, finding that "the facts stipulated are true". To permit defendant to deny her guilt as to these prior matters in the present proceeding, or to offer evidence beyond the fact that she stipulated to the AHC findings of guilt "for the purpose of settling this dispute, and not as an admission of guilt", as set forth in the findings incorporated into the two Consent Orders of the AHC, is to permit her to now cast doubt upon her actual guilt, which is to relitigate the issues.

On September 24, 1996, Ms. Malan filed for a petition for a writ of prohibition with this Court.

## III. ADMISSIBILITY OF SETTLEMENT

We hold that the court below erred in ruling that Ms. Kalberloh could read or introduce portions of the joint stipulations during the trial of her suit against Ms. Malan. Each explicitly states that it is being entered into solely for the purposes of settling the dispute, and not as any admission of liability by Ms. Malan. Each forms a part of a settlement between Ms. Malan and the Board of Pharmacy. As such, it is not admissible in evidence nor may the jury be informed about the fact of the prior settlements.

### A. Evidence of the Settlement Agreement and of the Stipulations Thereon is not Admissible for Any Purpose.

■ In order to further the public policy favoring the settlement of disputes, it is well established that settlement offers are not admissible in a subsequent trial. *Harmon v. Hamilton*, 903 S.W.2d 610, 615 (Mo.App. 1995). This is because settlement negotiations "should be encouraged and a party making an offer of settlement should not be penalized by revealing the offer to the jury if the negotiations fail to materialize." *Holt-*

*meier v. Dayani,* 862 S.W.2d 391, 403 (Mo. App.1993).

The danger of admitting evidence of settlements is that the trier of fact may believe that the fact that a settlement was attempted is some indication of the merits of the case. *See* 2 John W. Strong, McCormick on Evidence § 266 (4th ed.1992). As a result, "[i]f offers of settlement were admitted in evidence, they would have the natural tendency with the jury to denigrate the defense position at trial. No one would make offers if the risk of their being before the jury were a necessary corollary of the offer." *J.A. Tobin Constr. Co. v. State Highway Comm'n,* 697 S.W.2d 183, 186 (Mo.App.1985).

This policy also applies in situations involving a completed settlement with another party in the same or in a different case. Thus, *Asbridge v. General Motors Corp.,* 797 S.W.2d 775, 781 (Mo.App.1990), held that the trial court had not erred in excluding evidence that the plaintiff settled with one of the defendants during jury deliberations, stating, "[s]ettlement agreements tend to be highly prejudicial and should be kept from the jury unless there is a clear and cogent reason for admitting a particular settlement agreement." *See also* McCormick on Evidence at § 266 (the same policy considerations supporting exclusion of offers to settle with the defendant support exclusion of settlement or settlement offers involving a similar claim).[1] This rationale has also been applied to prevent admission of a prior civil settlement as an aid in establishing the validity of a later workers' compensation claim. *See Joice v. Missouri–Kansas–Texas R.,* 354 Mo. 439, 189 S.W.2d 568 (1945); *Taylor v. Associated Elec. Coop., Inc.,* 818 S.W.2d 669 (Mo.App.1991).

The desire to encourage settlements is fully applicable to settlement of administrative actions. Thus, at the time of the settlements at issue here, Section 536.060, governing ac-

tions by licensing Boards such as the Board of Pharmacy, stated:

> Nothing contained in sections 536.060 to 536.095 shall preclude the informal disposition of contested cases by stipulation, consent order, or default, or by agreed settlement where such settlement is permitted by law. Nothing contained in sections 536.060 to 536.095 shall be construed . . . (4) to prevent stipulations or agreements among the parties (including, in a proper case, the agency).

§ 536.060, RSMo 1994. As revised in 1995, Section 536.060 further explains that the legislature wants to permit and encourage settlements, stating, "[c]ontested cases and other matters involving licensees and licensing agencies described in section 621.045, RSMo, may be informally resolved by consent agreement or agreed settlement or may be resolved by stipulation, consent order, or default, or by agreed settlement where such settlement is permitted by law." § 536.060, RSMo Cum.Supp.1996. The Section goes on to say that nothing in Sections 536.060 to 536.095 shall be construed to prevent stipulations or agreements among the parties. *Id.* Furthermore, the statute governing the procedure for the handling of disputes between a licensee and a licensing agency also prescribes specific duties of an agency "in order to encourage settlement of disputes between any agency described in subsection 1 of this section and its licensees." § 621.045.3, RSMo Cum.Supp.1996.

■ This policy rationale supporting exclusion of evidence of settlements fully applies here. Ms. Malan had twice successfully defended against actions taken by the Board. The third action involved similar issues, and she nowhere admitted that her conduct had been improper. For practical reasons, however, she claims, she desired to settle, as did the Board. In any event, the settlements stated repeatedly that the facts stated there-

---

**1.** *McCormick* thus states:

> In an action between plaintiff (P) and defendant (D), a compromise offer or a completed compromise by D with a third person having a claim similar to P's arising from the same transaction may be relevant as showing D's belief in the weakness of the present action. Nevertheless, the same consideration of policy

which prompts exclusion of a compromise offer made by D to P, namely the danger of discouraging such compromises, also applies here. Accordingly, the prevailing view is that the compromise offer or payment made by the present defendant is privileged when offered as an implied admission of liability.
> McCormick on Evidence at § 266.

in were admitted *solely* for purposes of settlement. To now admit the stipulations contained in the settlement in this civil action would clearly be contrary to the intent of the settling parties, and would discourage further settlements in future cases, in derogation of the policy favoring settlements. For these reasons, no evidence of the settlement agreements may be admitted below.

### B. The Consent Agreements are not Admissible Under the Doctrine of Collateral Estoppel.

Although the parties have addressed the issues chiefly from the point of view that admissibility of the settlement agreements and the consent orders can be resolved together, we find that different principles govern our resolution of the question whether the consent orders, in and of themselves, are admissible even though the underlying settlement agreements are not.

Prior Missouri cases have recognized that at least some consent judgments can be considered judgments on the merits and so accorded collateral estoppel effect where the judgment otherwise meets the requirements for application of collateral estoppel. *Ste. Genevieve County v. Fox*, 688 S.W.2d 392 (Mo.App.1985); *Moore v. Beck*, 664 S.W.2d 15 (Mo.App.1984); *Owen v. City of Branson*, 305 S.W.2d 492 (Mo.App.1957). Here, however, we do not think the consent orders in question are admissible under general principles of collateral estoppel.

### 1. Elements of Collateral Estoppel.

■ Collateral estoppel bars relitigation of issues that have been determined in a prior proceeding. To determine whether collateral estoppel applies, the court must examine four factors: (1) whether the issue in the present case is identical to the issue in the prior case; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted is the same party or in privity with a party from the prior case; and (4) whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior case. *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 223 (Mo. banc 1994); *Curnutt v. Scott Melvin*

*Transport, Inc.*, 903 S.W.2d 184, 191 (Mo. App.1995); *Meckfessel v. Fred Weber, Inc.*, 901 S.W.2d 335, 339 (Mo.App.1995).

Ms. Kalberloh suggests that the consent orders at issue fulfill all of these requirements, because both the underlying case and the consent orders involve the issue of Ms. Malan's tendency to misfill prescriptions without regard to the injury this will cause to the patient, and because both consent orders were issued after a voluntary settlement and only once the AHC made independent determinations of the accuracy of the facts set out in the settlements.

We disagree. As noted immediately below, we find that neither of the consent orders constituted a judgment on the merits by an independent factfinder such as the AHC, and further that Ms. Malan has not had a full and fair opportunity to litigate the issues that formed the basis of either consent order. Moreover, we find that the issues involved in the underlying case are not the same as the issues involved in the consent orders, except insofar as the 1995 order involves Ms. Kalberloh's own claim.

### 2. The Consent Orders are Not Adjudications on the Merits After a Full and Fair Opportunity to Adjudicate.

■ Both consent orders were based on joint stipulations of Ms. Malan and the Board of Pharmacy which, as noted earlier, Ms. Malan admitted to be true *solely for the purpose of settlement.* While Ms. Kalberloh argues that the AHC made an independent determination of the truth of these stipulations before it entered either order, close inspection of the orders reveals otherwise.

The 1991 consent order specifically states that the AHC has reviewed the settlement stipulations of the parties and that it found that the stipulations were *"agreed to by the parties and therefore found to be true."* In other words, the AHC did not independently review the stipulations and determine whether the facts contained therein were true; it simply assumed they were true for the purposes of its decision *because* they were agreed to by the parties. It then reached the independent determination that these

facts, if true, would constitute a basis for discipline; this was a legal, not a factual, issue, however.

The facts underlying the 1995 consent order were also not subject to independent review by the AHC. Indeed, that order was not filed with the AHC at all. It was issued by the Executive Director of the Board of Pharmacy, a party to the settlement, not the AHC. That a party purported to find that its own allegations of facts, stipulated to solely for settlement, were true does not constitute a determination by an independent body that they indeed were valid. The AHC never saw the order, much less ever found the facts underlying it to be true. The orders do not constitute a judgment on the merits, and it is evident that Ms. Malan has not yet had a full and fair opportunity to litigate the stipulated facts. For these reasons, no aspect of the consent orders can be given collateral estoppel effect.

### 3. No Identity of Issues in Prior and Current Litigation.

▉▉▉ Ms. Kalberloh argues that the settlements and consent orders should nonetheless be admitted because the issue in this case is the same as the issue in the prior cases, in that both involve the alleged tendency of Ms. Malan to misfill prescriptions without regard to the consequences on the patient who takes the improper prescription, and that this evidence is relevant to the issue of punitive damages. She thus argues that she should be permitted to introduce the consent orders and stipulations as admissions of prior misconduct, and that Ms. Malan should be collaterally estopped to deny or explain this evidence.

We do not believe that the doctrine of collateral estoppel applies to this situation. The first element of collateral estoppel requires that the issues in the prior and present lawsuits be the same. The issue in the prior administrative actions was whether Ms. Malan misfilled certain prescriptions and engaged in improper bulk compounding as to persons who are not involved in the lawsuit below. These are not issues in the current suit, for in order to prove an element of the lawsuit below, Ms. Kalberloh need not prove

any issue which was essential to the determination of the prior actions. What Ms. Kalberloh wants to do is use these prior cases as evidence of intent. That is not the purpose of the collateral estoppel doctrine, however. For this reason, as well as for the other reasons noted above, neither the consent orders nor the settlements may be admitted.

### C. Application of Doctrine of Prior Similar Incidents.

Our ruling that the consent orders are not admissible under the doctrine of collateral estoppel does not mean that no evidence of prior misfilling of prescriptions by Ms. Malan is admissible. Some such evidence could be admissible if it is shown to be sufficiently relevant to issues in the case, and that it is not unduly prejudicial or confusing. But it is only the underlying facts of misfilling of prescriptions, not the settlements or consent orders, which may be admissible on this basis.

The doctrine under which this evidence may be admissible is not the doctrine of collateral estoppel, but rather the evidentiary doctrine which permits the admission in certain circumstances of evidence of prior similar incidents. Such incidents are admissible, however, only for very limited purposes, and only if their prejudicial impact is outweighed by their relevance to those limited issues.

▉▉▉ In particular, the law is clear that a plaintiff may not use the doctrine in order to introduce allegedly similar instances of prior negligence of the defendant in order to show that the defendant was negligent or reckless on this occasion, also. *Darnaby v. Sundstrom,* 875 S.W.2d 195, 198 (Mo.App. 1994); *Deveney v. Smith,* 812 S.W.2d 810, 812 (Mo.App.1991); *Chaney by Chaney v. Creten,* 658 S.W.2d 891, 893 (Mo.App.1983). As applied to this case, this means that the fact that Ms. Malan may have misfilled prescriptions for other people is not admissible to show that because she negligently filled other prescriptions, she probably negligently filled Ms. Kalberloh's prescription also.[2]

We do not have sufficient information to make the determination whether evidence of prior incidents is sufficiently similar to some relevant issue in the case below that it should

---

**2.** The facts of Ms. Kalberloh's own case, of     course, are the subject of the underlying case and

be admitted for a limited purpose. That is an issue which the trial court, in its broad discretion, must resolve on remand. The point we make is only that the mere fact that Ms. Malan misfilled prior prescriptions does not in itself show negligence or a course of conduct intended to injure patients.

 In making this determination, the trial court must be guided by the purpose for which the evidence is sought to be used, whether it is sufficiently similar in respects relevant to that purpose, and whether it is unduly prejudicial or confusing when used for that purpose. *Pierce v. Platte–Clay Elec. Coop., Inc.,* 769 S.W.2d 769, 774 (Mo. banc 1989).

Thus, for example, if Ms. Malan claimed she did not know that substituting one drug for another could be dangerous, then the evidence of a prior incident involving substitution, which resulted in injury, might well be relevant to show notice of the impropriety of substitution. Also, if she claimed that she just did not know that a particular substitution was dangerous, then a prior case involving this same substitution which resulted in injury to a patient might well be relevant to show knowledge of the dangerousness of that substitution.[3] What would be admitted would be the facts of the prior incidents, however, not any settlement or consent order based thereon.

On the other hand, if the prior case involved bulk compounding, it would be irrelevant to this case involving improper drug substitution. Similarly, if the prior case involved a different substitution, its minimal relevance would normally be outweighed by its potentially prejudicial effect.[4] That might not be the case, however, if Ms. Malan claimed that she had a perfect record and had never misfilled a prescription.[5] Again, however, it would be the facts of such prior cases, and not the consent order or settlement agreements which might be admissible on this basis.

In sum, the consent orders are not such judgments as can be given collateral estoppel effect. The settlement agreements are excluded for policy reasons. Whether some of the facts of one or more prior incidents which happen to be part of the consent orders are themselves admissible should be determined on remand in accordance with this opinion. Of course, if admitted, Ms. Malan is entitled to explain such prior incidents to the jury.

Writ of prohibition made absolute.

All concur.

---

will be admitted without reference to the doctrine governing admission of prior incidents.

**3.** *See e.g., Pierce,* 769 S.W.2d at 775–76 (admitting evidence of other accidents to show dangerousness of substantially similar conditions); *Chaney,* 658 S.W.2d at 893 (admitting evidence of prior accidents to show the defendant's knowledge of the danger involved). *Cf. Litchfield v. May Dep't Stores Co.,* 845 S.W.2d 596 (Mo.App. 1992) (stating that evidence of a similar accident two days earlier was admissible but insufficient to support an award of punitive damages on the basis that the defendant knew its conduct was likely to cause physical harm).

**4.** *Schultz v. Webster Groves Presbyterian Church, Ass'n,* 726 S.W.2d 491 (Mo.App.1987), held that evidence of prior accidents was insufficiently similar to be admitted because it "related to a different place, to a different time (some 45 minutes earlier) and a different location." *Rothschild v. Barck,* 324 Mo. 1121, 26 S.W.2d 760 (1930), refused to admit evidence of prior unsuccessful operations because the issue in the present case was whether the doctor had used proper care and skill in operating on the plaintiff and lack of care or skill used on other patients was not relevant. Similarly, *Darnaby,* relying on *Rothschild,* held that the defendant's alleged negligent treatment of other patients was not relevant because the issue was "whether defendant exercised proper care and skill in operating upon plaintiff." 875 S.W.2d at 199.

**5.** Thus, in *Pettet v. Bieterman,* 718 S.W.2d 188 (Mo.App.1986), the court admitted evidence that the defendant surgeon, while only conducting eight or ten laparoscopic operations, had also punctured a previous patient's bladder, but it did so only because defendant testified that bladder punctures were so rare that they only happened in three out of one thousand such operations. *Accord Deveney,* 812 S.W.2d at 812 (admitted evidence of prior instances that the defendant oral surgeon's patients had suffered from the same injury as the plaintiff where defendant had made frequency of occurrence a material issue by presenting evidence that the particular injury was "very, very rare").