

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE MATTER OF THE ) 
APPLICATION OF RATE INCREASE )
REQUEST FOR LIBERTY UTILITIES )
(MISSOURI WATER), LLC d/b/a )
LIBERTY UTILITIES, )
  )
              Respondent, )
  )
ORANGE LAKE COUNTRY CLUB, INC., )   **WD82532**
and SILVERLEAF RESORTS, INC., )
  )   **OPINION FILED:**
              Appellants, )   **November 19, 2019**
v. )
  )
  )
MISSOURI PUBLIC SERVICE )
COMMISSION, )
  )
              Respondent. )

### Appeal from the Missouri Public Service Commission

**Before Division One:** Edward R. Ardini, Jr., Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

      Orange Lake Country Club, Inc. ("Orange Lake") and Silverleaf Resorts, Inc.

("Silverleaf") appeal from the Report and Order of the Missouri Public Service Commission

("PSC") approving water and sewer utility rate increases for Liberty Utilities (Missouri Water)

LLC ("Liberty"). We affirm.

**Factual and Procedural Background**[1]

The Missouri General Assembly created the PSC to serve as the state administrative agency authorized to regulate public utilities, including water corporations and sewer corporations, operating within Missouri. § 386.040;[2] § 386.250(3), (4). The PSC employs an independent technical advisory staff ("Staff") whose duty is to render advice and assistance to the PSC commissioners and administrative law judges on technical matters within their areas of expertise that may arise during the course of proceedings before the PSC. § 386.135.4. The Office of Public Counsel ("OPC") represents and protects the interests of the public in any proceeding before or appeal from the PSC. § 386.710.1(2).

Liberty is a public utility, water corporation, and sewer corporation, as those terms are defined in section 386.020(43), (59), and (49), subject to regulation by the PSC as provided in Chapters 386 and 393. Liberty provides water service to approximately 2,000 connections in Cape Girardeau, Franklin, Jefferson, McDonald, Stone, and Taney counties in Missouri, and provides sewer service to approximately 400 connections in Cape Girardeau, Franklin, Jefferson, Stone, and Taney counties in Missouri.

Silverleaf was the developer and manager of three vacation ownership resort properties, one in each of Taney County, Stone County, and Jefferson County, Missouri. Silverleaf was a property owner at each of the three resorts and was a party to a water and sewer service agreement with Liberty. Silverleaf and Orange Lake were affiliate entities. Orange Lake was

---

[1] "We consider the evidence, along with all reasonable supporting inferences, in the light most favorable to the [PSC's] order." *Water Rate Request of Hillcrest Util. Operating Co. v. Mo. Pub. Serv. Comm'n*, 523 S.W.3d 14, 18 (Mo. App. W.D. 2017) (internal quotation marks omitted). "If the evidence supports two conflicting conclusions, we will defer to the [PSC's] factual findings." *Id*. at 18-19.

[2] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

the successor developer and manager for each of the homeowner associations representing 36,686 individual timeshare vacation property owners[3] at the three resorts served by Liberty.

On December 15, 2017, Liberty filed a letter with the PSC pursuant to 4 CSR 240-3.050 Small Utility Rate Case Procedure (Nov. 30, 2015) ("SURP"), requesting a $995,844 increase in its annual water system operating revenues and a $196,617 increase in its annual sewer system operating revenues. On December 19, 2017, the PSC opened two cases, WR-2018-0170 and SR-2018-0171, and Staff filed a "Small Utility Rate Case Timeline" pertaining to the processing of Liberty's revenue increase request. Liberty moved to consolidate the two cases pursuant to 4 CSR 240-2.110(3) (Nov. 30, 2015) as they involved related questions of law and fact. The PSC granted Liberty's motion and ordered consolidation of the cases. Pursuant to 4 CSR 240-2.075 (Nov. 30, 2015), Orange Lake and Silverleaf (collectively, "Orange Lake") filed a joint motion to intervene, which the PSC granted.

On February 8, 2018, pursuant to 4 CSR-2.080, Orange Lake filed a motion to dismiss, or in the alternative, to order Liberty to file a tariff pursuant to section 393.140(11). Orange Lake argued that Liberty did not fit the profile of a small utility that SURP was designed to benefit and should be ordered to pursue its proposed rate increases by filing a tariff under the traditional statutory "file and suspend" procedure of section 393.140(11). While Liberty argued that it qualified for SURP because it had fewer than 8,000 customers, Orange Lake contended that the 36,686 timeshare owners were water and sewer customers within the meaning of 4 CSR 240-3.010(7) (Apr. 30, 2008). On the other hand, Staff calculated the number of customers by the number of meters served by a utility, and based on Staff's calculation, Liberty served 2,364 customers (counting water and sewer customers separately). On April 4, 2018, the PSC issued

---

[3] A timeshare property owner holds use rights with vacation properties such as these in which each timeshare owner is allotted a certain period of time in which the owner can use the property during each year.

its order denying Orange Lake's motion to dismiss, finding that Orange Lake was Liberty's customer as Orange Lake was financially responsible to the utility while the individual timeshare customers were separately responsible to the resort for utility services and maintenance fees and that Liberty met the requirement of having less than 8,000 customers to avail itself of SURP.

On May 24, 2018, Staff filed a Partial Disposition Agreement and Request for Evidentiary Hearing ("Partial Disposition Agreement"). Staff, Liberty, and OPC reached agreement on some of the issues raised by Liberty's rate increase request and requested an evidentiary hearing on certain unresolved issues, including return on equity and capital structure. On June 13, 2018, the PSC issued a procedural schedule, setting the dates to pre-file direct, rebuttal, and surrebuttal testimony; designating August 3, 2018, as the last day to request discovery; and scheduling the evidentiary hearing for August 15-17, 2018.

On July 30, 2018, Staff filed a motion to strike portions of the pre-filed rebuttal testimony of Orange Lake's expert witness, Mr. Stannard, for improperly including content from Staff's settlement offer provided during the rate case process. By an August 2, 2018 order, the PSC granted Staff's motion to strike portions of Mr. Stannard's rebuttal testimony referencing Staff's settlement offer.

On August 3, 2018, Liberty and Staff filed a Non-Unanimous Stipulation and Agreement ("Stipulation"), in which they agreed and recommended, exclusive of rate case expense, that the total overall annual revenue requirement for Liberty's water system operations was $1,690,117, representing an increase of $818,800 (a 92.4% increase over rate revenues authorized by current tariffs), and that, exclusive of rate case expense, the total overall annual revenue requirement for Liberty's sewer system operations was $455,163, representing an increase of $196,782 (a 75.8% increase over rate revenues authorized by current tariffs). The parties agreed that Liberty would

4

file proposed compliance tariffs comporting with the terms of the Stipulation at an agreed-upon rate design.

An evidentiary hearing was conducted on August 16, 2018. The PSC issued its Report and Order on October 24, 2018, with an effective date of November 3, 2018. The PSC found that Liberty's evidence failed to sustain its burden that its originally requested increase of $995,844 in annual water system operating revenues and $196,617 in annual sewer revenues was just and reasonable. However, the PSC found that Liberty did produce sufficient evidence to support that its requested rate increase of $818,800 for water operations and $196,782 for sewer operations in its joint position statement was just and reasonable. On November 5, 2018, Liberty filed compliance tariffs with an effective date of December 5, 2018, to comply with the Report and Order. The PSC approved Liberty's compliance tariffs by order on November 28, 2018, with an effective date of December 8, 2018. On January 9, 2019, the PSC issued its order denying Orange Lake's application for rehearing.

Orange Lake timely appealed.

**Standard of Review**

"Pursuant to section 386.510, the appellate standard of review of a [PSC] order is two-pronged: first, the reviewing court must determine whether the [PSC]'s order is lawful; and second, the court must determine whether the order is reasonable." *Petition of Mo.-Am. Water Co. for Approval to Change its Infrastructure Sys. Replacement Surcharge v. Office of Pub. Counsel*, 516 S.W.3d 823, 827 (Mo. banc 2017) (internal quotation marks omitted). "The PSC's order is presumed valid, and the appellant has the burden of proving that the order is unlawful or unreasonable." *Id*. The lawfulness of an order is determined by whether the PSC had statutory

5

authority to issue the order. *Id.* We review the issue of statutory authorization or lawfulness *de novo*. *Id.*

A reasonableness challenge is an argument that the PSC's Report and Order "is not supported by substantial, competent evidence on the whole record; is arbitrary or capricious; or constitutes an abuse of discretion." *Mo.-Am. Water Co.'s Request for Auth. to Implement a Gen. Rate Increase for Water & Sewer Serv. Provided in Mo. Serv. Areas v. Office of Pub. Counsel*, 526 S.W.3d 253, 265-66 (Mo. App. W.D. 2017).

## Analysis

## Point I

In Orange Lake's first point, it asserts that the PSC erred in permitting Liberty to initiate a rate case by sending a letter rather than filing a tariff. Specifically, Orange Lake contends that the SURP, which authorized such a procedure, is unlawful in that it is not authorized by and conflicts with the PSC's enabling statutes.[4] Orange Lake argues that the only mechanism for a utility to request a rate change is through the file-and-suspend procedure set forth in section 393.150.1.

"As a creature of statute, the Commission only has the power granted to it by the Legislature and may only act in a manner directed by the Legislature or otherwise authorized by necessary or reasonable implication." *Staff of Mo. Pub. Serv. Comm'n v. Consol. Pub. Water*

---

[4] In response to Orange Lake's first point, Liberty contends that the issue of the lawfulness of the rule was rendered moot because the rule that Orange Lake seeks to challenge has been rescinded. The Small Utility Rate Case Procedure rule, 4 CSR 240-3.050, was rescinded effective May 30, 2018, and was replaced by the Staff Assisted Rate Case Procedure rule, 4 CSR 240-10.075, effective the same date. However, simply because the SURP regulatory scheme was rescinded and replaced in May 2018 does not make the underlying dispute in this case moot. The present controversy is guided by the regulatory scheme that was in effect at the time Liberty obtained the rate change. This case presents a live controversy in that our determination of the lawfulness of SURP impacts the lawfulness of the rate change obtained by Liberty pursuant thereto.

In addition, as a result of Executive Order 19-02, the PSC was transferred from the Department of Economic Development to the Department of Commerce and Insurance. Effective August 28, 2019, the rules pertaining to the PSC were moved from 4 CSR 240 to 20 CSR 4240. *See* 44 Mo. Reg. 2322-23 (Sept. 2, 2019).

*Supply Dist. C-1 of Jefferson Cty., Mo.*, 474 S.W.3d 643, 649 (Mo. App. W.D. 2015) (internal quotation marks omitted). "The [PSC's] statutory authority is primarily expressed in Chapters 386 and 393." *Id.*

The PSC has the statutory authority to regulate all public utilities in Missouri, including water and sewer corporations like Liberty. § 386.250(3), (4), (5). This includes the authority to "determine and prescribe the just and reasonable rates and charges" for public utility services. § 393.140(5). The PSC also has the statutory authority to adopt rules governing, among other things, practice and procedure. § 386.410.1.

The PSC adopted the rule at issue in this case, 4 CSR 240-3.050 Small Utility Rate Case Procedure (Apr. 30, 2008), effective May 30, 2008, for the purpose of "provid[ing] procedures whereby certain small utilities may request increases in their overall annual operating revenues, without complying with the rules pertaining to general rate cases set forth elsewhere in this chapter."[5] The stated authorities under which the PSC filed the rule were sections 386.040 RSMo 2000 (PSC established), 386.250 RSMo 2000 (PSC jurisdiction), 393.140 RSMo 2000

---

[5] The small company rate increase procedure has been in effect in Missouri for almost a quarter of a century. Pursuant to the General Assembly's grant of statutory authority under section 386.410, the PSC filed 4 CSR 240-2.200 Small Company Rate Increase Procedure, effective November 30, 1995. The purpose of the rule was to "provide[ ] procedures for small water, sewer and gas utilities to obtain rate increases." Small companies seeking a general increase in revenues through a small company rate proceeding were directed to file a letter requesting the change, with the instruction that "[t]he request shall not be accompanied by any tariff sheets." 4 CSR 240-2.200.1 (2/28/99). The rule was rescinded and readopted effective April 30, 2000, with the minor addition of the phrase "Notwithstanding any other rule to the contrary" to the beginning of section (1) to avoid a possible conflict with another PSC rule, 4 CSR 240-10.070(1), which governed the filing of general rate cases. 25 Mo. Reg. 583-84 (Mar. 1, 2000). Effective April 30, 2003, the PSC rescinded the rule from Chapter 2—Practice and Procedure for the purpose of "adopting nearly identical requirements mirroring those found in the rule in a new rule in the [PSC's] new Chapter 3, as a part of an overall reorganization of the [PSC's] rules regarding general filing requirements." 27 Mo. Reg. 1578 (Sept. 16, 2002). The PSC adopted new rules effective April 30, 2003, in Chapter 3—Filing and Reporting Requirements, providing procedures for small utilities to obtain rate increases: 4 CSR 240-3.635 Water Utility Small Company Rate Increase Procedure (Mar. 31, 2003); 4 CSR 240-3.330 Sewer Utility Small Company Rate Increase Procedure (Mar. 31, 2003); and 4 CSR 240-3.240 Gas Utility Small Company Rate Increase Procedure (Mar. 31, 2003). As in the original rule, under each new rule, "small companies . . . may seek a general increase in revenues through a small company rate case by filing a letter requesting the change. The request shall not be accompanied by any tariff sheets." The individual utility small company rate increase procedure rules were each rescinded effective September 30, 2009. 4 CSR 240-3.635; 4 CSR 240-3.330; and 4 CSR 240-3.240 (Aug. 31, 2009).

(PSC's general powers in respect to gas, water, electricity, and sewer services), 393.290 RSMo 2000 (PSC's powers relating to other utilities made applicable to heating companies), and 393.291 RSMo Supp. 2007 (steam heating companies permitted to file under small company rate procedure promulgated by PSC). As in the prior iterations of the rule, 4 CSR 240-3.050(2) (Apr. 30, 2008) provided:

> A small utility may initiate a rate case by filing a letter requesting an increase in its overall annual operating revenues with the secretary of the commission. A utility filing such a request shall specify the amount of the revenue increase that it is seeking, but shall not submit any proposed tariff revisions with the request.

The Missouri Supreme Court has recognized that there are alternative procedures for utilities to initiate rate increase proceedings. In *State ex rel. Jackson County v. Public Service Commission*, 532 S.W.2d 20 (Mo. banc 1975), the PSC issued a Report and Order authorizing an electric utility company to increase its electric rates. *Id*. at 21. Electricity consumers filed a petition in the circuit court seeking review of the PSC's order and a motion for reversal of the new rates. *Id*. In their motion, the consumers asserted that the rate increase initiated by the "file and suspend" method[6] and authorized by the PSC was a nullity because a rate increase could only be considered under the "complaint" method.[7] *Id*. at 23. The circuit court granted the motion for relief, and the PSC appealed. *Id*. at 21. The Missouri Supreme Court rejected the circuit court's conclusion that the "complaint" method was the exclusive means for utilities to initiate rate increase proceedings and held that electric rate increases could be initiated by either the "file and suspend" method or under the "complaint" method. *Id*. at 28-29. As our Supreme

---

[6] Pursuant to section 393.150.1, a utility may file a rate schedule, also known as a tariff, stating a new rate. The new rate will become valid unless the PSC suspends operation of the rate schedule. *Id*. If suspended, the PSC must hold a hearing concerning the propriety of the new rate within a specified time. *Id*. After a full hearing, the PSC then makes an order regarding the rate. *Id*.

[7] Under sections 386.390.1 and 393.270, a complaint may be filed with the PSC by enumerated parties or on motion of the PSC as to the reasonableness of a utility's rates. The PSC may investigate any matter as to which a complaint may be filed or in order to enable it to ascertain facts requisite to the exercise of any powers conferred upon it. § 393.270.1. At the conclusion of any hearing and investigation, the PSC makes an order fixing the maximum price to be charged for the utility service. § 393.270.2, .3.

Court observed, "the experience in Missouri now covers over sixty years and the 'file' method has been accepted and consistently used throughout that time—absent the precise attack now made." *Id.* at 28. The court further noted "[e]ither procedure authorizes and, in fact, contemplates that the [PSC] will protect not only the rights of the consuming public but also the financial integrity of the utilities—by public hearings, where proper."[8] *Id*. at 29.

Like the "file and suspend" method and the "complaint" method, the experience in Missouri with the small company rate increase procedure now covers decades of use, and the "letter" method has also "been accepted and consistently used throughout that time." *Id.* at 28. The General Assembly recognized the utility of SURP in the context of the PSC ordering a capable public utility to acquire a small water or sewer corporation when it enacted section 393.146.11 in 2005:

> [T]he [PSC] shall authorize the acquiring capable public utility to utilize the [PSC's] **small company rate case procedure** for establishing the rates to be applicable to the system being acquired. . . . The acquiring capable public utility may utilize the [PSC's] **small company rate case procedure** for the purposes stated in this section until such time that a determination is made on the acquiring utility's next company-wide general rate increase, but not in excess of three years from the date of the acquisition of the subject small water or sewer corporation.

(Emphasis added.) Two years earlier in 2003, the General Assembly specifically authorized steam heating companies to file under a small company rate increase procedure promulgated by the PSC:[9]

> A steam heating company having fewer than one hundred customers in this state may file under a **small company rate procedure** promulgated by the [PSC] which shall be consistent with 4 CSR 240-3.240 [gas utility small company rate increase procedure] by giving notice to the secretary of the [PSC], the public

---

[8] Additionally, section 393.140(5) authorizes the PSC to determine and prescribe just and reasonable rates if it determines, after a hearing had upon its own motion or upon complaint, that a utility's rates are "unjust, unreasonable, unjustly discriminatory or unduly preferential" or in violation of the law.

[9] 4 CSR 240-3.440 Small Steam Heating Utility Rate Case Procedure was filed September 22, 2003, effective April 30, 2004, to provide the procedures whereby small steam heating utilities could request increases in their annual operating revenues without the necessity of meeting the filing requirements for a general rate increase request.

counsel, each customer, and each gas corporation or electric corporation providing utility service in the area.

§ 393.291 RSMo Cum. Supp. 2004 (emphasis added).

When each statute authorizing the use of the small company rate increase procedure was enacted, a rate case was initiated by the "letter" method, a procedure identical with the procedure in the regulation at issue, 4 CSR 240-3.050(2). The small company rate case procedure has been consistent over the years. At the conclusion of the procedure, the PSC is required to "set just and reasonable rates." 4 CSR 240-3.050(25) (Apr. 30, 2008). Clearly, the PSC and the General Assembly have accepted the small company rate increase procedure as an alternative to the "file and suspend" or "complaint" procedures, whereby certain small utilities may request rate increases without complying with the rules pertaining to general rate cases. Accordingly, pursuant to the same logic our Supreme Court noted in *State ex rel. Jackson County v. Public Service Commission*, *supra*, the PSC's Report and Order is lawful. The PSC was authorized to order new rates for Liberty at the conclusion of the SURP procedure authorized by the Commission's statutory rule-making and rate-making authority.

Point I is denied.

**Point II**

In Orange Lake's second point, it asserts that the PSC erred in permitting Liberty to initiate a rate case under SURP because Liberty did not qualify as a small utility under that rule.

Under the SURP rule in effect when Liberty initiated this case, "a water or sewer utility serving eight thousand (8,000) or fewer customers . . . shall be considered a small utility under this rule." 4 CSR 240-3.050(1) (Apr. 30, 2008). 4 CSR 240-3.010(7) (Apr. 30, 2008) defines a customer as "any person, firm, partnership, corporation, municipality, cooperative, organization,

10

governmental agency, etc., that accepts financial and other responsibilities in exchange for services provided by one (1) or more public utilities."

After Liberty filed a letter with the secretary of the PSC under the SURP regulation, Orange Lake moved to dismiss Liberty's application for a rate increase, arguing among other things that Orange Lake was an intermediary entity between Liberty and the 36,686 timeshare vacation homeowners of the resort properties, and therefore, Liberty's actual number of end-user customers greatly exceeded the 8,000 customer threshold for filing under SURP.  By order, the PSC denied Orange Lake's motion, finding:

> The language of Rule 4 CSR 240-3.010(7), states clearly that a customer accepts financial responsibility in *exchange* for services provided by a public utility.  An exchange is a two-way trade.  While [Orange Lake] state[s] that no contractual relationship need exist between the customer and the public utility, this stretches the plain meaning.  The public utility is *exchanging* services for the customers' acceptance of financial responsibility; any other reading misses the rule[']s plain meaning:  That the customer is directly financially responsible to the utility.  Movants [Orange Lake and Silverleaf] frame themselves as an intermediary, but they are the customer, as they are financially responsible to the utility; the individual timeshare customers are separately responsible to the resort for utility services and other maintenance fees.  This is most clearly evidenced by the penalties for failure to pay such fees to the resort, which are liens and foreclosure, but not disconnection of utility services.

"The power of the [PSC] to make rules includes the power to determine any reasonable interpretation and application of such rules."  *Deaconess Manor Ass'n v. Pub. Serv. Comm'n,* 994 S.W.2d 602, 609 (Mo. App. W.D. 1999).  The PSC's interpretation of 4 CSR 240-3.010(7) is both logical and supported by the record.

In the June 22, 2018 Review and Audit of Liberty's "informal rate increase request," the PSC's Auditing Department reported that Liberty "currently serves 1,954 water customers and 416 sewer customers, located within its 14 certificated service areas with 11 different sets of tariff rates."  In the direct testimony of Jill Schwartz, Liberty's Senior Manager of Rates and

11

Regulatory Affairs, Ms. Schwartz testified that "Liberty currently provides water service to approximately 2,000 connections . . . [and] provides sewer service to approximately 400 connections." Orange Lake submitted an affidavit by Lori Howell, the homeowners association board president at three resorts serviced by Liberty. Ms. Howell stated that:

> Pursuant to the Declaration for each Property and each unit Owner's Deed, Owners are responsible for paying various costs associated with maintaining and making use of the unit. The Owners make that payment in the form of maintenance fees. A portion of funds collected from Owners as maintenance fees are used to pay the invoices [submitted to Orange Lake] from Liberty Utilities.

At the August 16, 2018 evidentiary hearing, Orange Lake's expert, William Stannard, testified that the total number of meters for Orange Lake was 371; that Liberty bills Orange Lake, and Orange Lake (not the individual timeshare owners) pays those bills; and that Orange Lake is *reimbursed* for the cost of water service through maintenance fees paid by its fractional timeshare owners. In its brief, Orange Lake concedes that:

> Orange Lake [not the timeshare owners] pays Liberty for water and sewer services at each of Orange Lake's timeshare properties. The timeshare owners then reimburse Orange Lake for the cost of those services pursuant to the Declaration of Rights that governs their relationship with Orange Lake.

App. Br. 25. Hence, substantial evidence supports the PSC's conclusion that *Orange Lake*, not the timeshare owners, was its "customer" as that term is used in 4 CSR 240-3.010(7), as it is clear that Liberty's recourse for an unpaid utility bill was to Orange Lake, not the timeshare owners. "Where credible testimony is presented to support the [PSC's] findings, this court has found the [PSC's] order to be supported by competent and substantial evidence." *Deaconess Manor Ass'n*, 994 S.W.2d at 611. The PSC's Report and Order is reasonable because the PSC's finding that Liberty had 8,000 or fewer customers was supported by substantial, competent evidence on the whole record.

Point II is denied.

12

**Point III**

In Orange Lake's third point, it asserts that the PSC abused its discretion in striking portions of the rebuttal testimony of Orange Lake's expert witness, William Stannard.

On April 24, 2018, Staff emailed to the parties in this case a proposed Disposition Agreement, stating: "Please find attached Staff's **settlement offer** in accordance with Day 120 on the amended timeline." (Emphasis added.) On July 20, 2018, Orange Lake filed the Rebuttal Testimony of Mr. Stannard, which directly referred to the "Staff Day 120 Report" and information contained therein, as part of its arguments to the PSC. On July 30, 2018, Staff filed a motion to strike portions of the pre-filed Rebuttal Testimony of Mr. Stannard for "improperly including content from Staff's Settlement offer provided at Day 120 of the rate case process." In Orange Lake's response, it agreed that "Staff's proposed Disposition Agreement, which sets forth, for settlement negotiation purposes, specific terms and conditions for [the] purpose of settling this case, was and is a confidential settlement communication." However, Orange Lake disagreed that Staff's work product produced in support of Staff's settlement offer was "confidential settlement communication." On August 2, 2018, the PSC entered its order granting Staff's motion and striking the portions of Mr. Stannard's Rebuttal Testimony referencing the settlement offer or work product produced in preparation of the settlement offer. At the evidentiary hearing, Orange Lake offered Mr. Stannard's Rebuttal Testimony into evidence as Exhibit 301. Staff renewed its motion to strike, which was sustained by the regulatory law judge on the grounds that "I do not believe settlement information belongs in testimony."

Section 386.410.1 provides: "All hearings before the commission . . . shall be governed by rules to be adopted and prescribed by the commission." The PSC's practice rule 4 CSR 240-2.090(7) (Nov. 30, 2015) instructs that settlement offers are privileged and are not to be

13

presented to the trier of fact: "Facts disclosed in the course of a prehearing conference and **settlement offers are privileged and, except by agreement, shall not be used against participating parties unless fully substantiated by other evidence**."[10] (Emphasis added.) In addition, the SURP procedure in 4 CSR 240-3.050(10) (Apr. 30, 2008) provides that the 120-day proposal by Staff is a settlement proposal:

> No later than one hundred twenty (120) days after a case is opened, the staff shall provide a **settlement proposal** to the utility and the public counsel. **This proposal shall include the staff's recommended changes** pertaining to the following: the utility's annual operating revenues; the utility's customer rates; the utility's service charges and fees; the utility's plant depreciation rates; the utility's tariff provisions; the operation of the utility's systems; and the management of the utility's operations. **The staff shall also provide the following with its settlement proposal**: draft revised tariff sheets reflecting the staff's recommendations; a draft disposition agreement reflecting the staff's recommendations; its audit workpapers; its rate design workpapers; and any other documents supporting its recommendations. **A disposition agreement is a document that sets forth the signatories' proposed resolution of some or all of the issues pertaining to the utility's revenue increase request.**

(Emphasis added.) The PSC is within its authority to reject testimony that is filed in violation of rules governing its procedures. *Kansas City Power & Light Co.'s Request for Auth. to Implement a Gen. Rate Increase for Elec. Serv. v. Mo. Pub. Serv. Comm'n*, 509 S.W.3d 757, 772 (Mo. App. W.D. 2016).

Furthermore, the Small Utility Rate Case Timeline filed by Staff on December 22, 2017, shortly after Liberty's small utility revenue increase request was filed, clearly states that information provided on Day 120 was settlement, as well as the correspondence and information contained therein, through the day of the filing of the final Disposition Agreement on Day 150:

---

[10] Staff stated in its motion that "[a]t no point has Staff waived the privilege or confidentiality of its settlement offer." Furthermore, there is no evidence in the record that the facts used by Mr. Stannard, which had been disclosed in Staff's settlement offer, were "fully substantiated by other evidence" by Orange Lake.

- on day 120, "Staff's **Settlement Proposal** Packet Sent to Utility & OPC and Arrangements Made for Conference Call or Meeting to Discuss the Proposal" (emphasis added);

- on day 130, "Conference Call or Meeting Held with Utility & OPC to Discuss **Staff's Settlement Proposal"** (emphasis added);

- on day 135, "Utility & OPC Notify Staff of Whether They Agree with the **Settlement Proposal** (if not, the reasons for that and suggested changes to the settlement proposal documents are provided to the Case Manager)" (emphasis added);

- on day 140, "Agreed-Upon Changes to **Settlement Proposal Documents** Completed and Final Disposition Agreement Sent to Company for Signing (copy also sent to OPC; OPC may or may not sign)" (emphasis added);

- on day 145, "Signed Disposition Agreement Returned to Staff"; and

- on day 150, "Staff Files **Executed Disposition Agreement**" (emphasis added).

"The Commission has broad discretion in evidentiary determinations." *State ex rel. Mo. Pipeline Co. v. Mo. Pub. Serv. Comm'n*, 307 S.W.3d 162, 176 (Mo. App. W.D. 2009). The PSC's decision regarding expert testimony is a factual determination, similar to evidence of negotiating history, surrounding circumstances, and industry practice, and is, therefore, entitled to deference; and we review the decision under the reasonableness prong. *State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n*, 399 S.W.3d 467, 478 & n.17 (Mo. App. W.D. 2013). "An order is reasonable if it is supported by substantial, competent evidence, it is not arbitrary or capricious, and the Commission has not abused its discretion." *Water Rate Request of Hillcrest Util. Operating Co.*, 523 S.W.3d 14, 18 (Mo. App. W.D. 2017) (internal quotation marks omitted). Accordingly, we review a PSC evidentiary ruling for an abuse of discretion. *See State*

15

*ex rel. Ark. Power & Light Co. v. Mo. Pub. Serv. Comm'n*, 736 S.W.2d 457, 459-61 (Mo. App. W.D. 1987) (reversing order where PSC abused its discretion by imposing unduly harsh sanction against utility by striking utility's relevant documentary evidence and the expert testimony related to it for alleged discovery violation).

"In order to further the public policy favoring the settlement of disputes, it is well established that settlement offers are not admissible in a subsequent trial." *State ex rel. Malan v. Huesemann*, 942 S.W.2d 424, 427 (Mo. App. W.D. 1997). "This policy also applies in situations involving a completed settlement with another party in the same or in a different case." *Id*. at 428. "The desire to encourage settlements is fully applicable to settlement of administrative actions." *Id*. This policy rationale supporting exclusion of evidence of settlement offers fully applies here. In addition, although the regulatory law judge did not admit Mr. Stannard's Rebuttal Testimony into evidence, Orange Lake was granted leave to file substitute rebuttal testimony, which it did. Mr. Stannard's Refiled Rebuttal Testimony, which did not cite Staff's settlement offer, was admitted into evidence as Exhibit 302. For these reasons, the PSC's Report and Order is reasonable in that the PSC did not abuse its discretion in striking references to Staff's settlement offer contained in Mr. Stannard's Rebuttal Testimony.

Point III is denied.

### Point IV

In Orange Lake's fourth point, it asserts that the PSC abused its discretion in overruling Orange Lake's motion to strike the surrebuttal testimony of Liberty's sole expert witness, Keith Magee, and in considering his testimony in rendering its decision. Orange Lake argues that Liberty's failure to disclose Mr. Magee as an expert witness until August 3, 2018, the last day of discovery, was a violation of discovery rules and was prejudicial to Orange Lake.

16

The PSC's decision regarding expert testimony is entitled to deference. *Union Elec. Co.*, 399 S.W.3d at 478 & n.17. We review a PSC's evidentiary ruling for an abuse of discretion. *Ark. Power & Light Co.*, 736 S.W.2d at 459-61.

Orange Lake's argument that Liberty violated Rule 56.01 by not timely disclosing Mr. Magee as an expert witness is unpersuasive. While "[d]iscovery may be obtained by the same means and under the same conditions as in civil actions," 4 CSR 240-2.090(1) (Nov. 30, 2015), the PSC rules provide additional, alternative procedures for discovery. Under the PSC's rules of practice and procedure regarding discovery, "[p]arties may use data requests as a means for discovery." 4 CSR 240-2.090(2) (Nov. 30, 2015). A data request is "an informal written request for documents or information that may be transmitted directly between attorneys, agents, or employees of the commission, public counsel, or other parties." 4 CSR 240-2.090(2)(A) (Nov. 30, 2015). On March 30, 2018, Orange Lake propounded data requests to Liberty, which included Data Request No. 4(b):

> b. Provide the name of the individual(s) that would testify regarding return on equity and capital structure on behalf of Liberty Utilities.
>
> . . . .
>
> i. Provide all work papers or other analysis the Company has conducted regarding return on equity and capital structure.

Liberty responded, "Until the Company understands what specific issues would be tried, it is unable to identify the individuals that would testify on behalf of Liberty Utilities."

The PSC's scheduling order required all parties to file rebuttal testimony on July 20, 2018. It was not until Staff filed the rebuttal testimony of David Murray and Orange Lake filed the rebuttal testimony of William Stannard that Liberty knew that those experts were giving testimony relating to Liberty's return of equity and capital structure that challenged

17

Ms. Schwartz's direct testimony. Mr. Magee was retained by Liberty for this case shortly after the rebuttal testimony filing deadline, approximately three weeks prior to the August 16, 2018 evidentiary hearing. On August 3, 2018, the same day Orange Lake filed the refiled rebuttal testimony of its expert witness, Mr. Stannard, and Staff filed the substitute rebuttal testimony of its witness, Mr. Murray, and two weeks before the evidentiary hearing, Orange Lake deposed Ms. Schwartz, who disclosed that Liberty would pre-file surrebuttal testimony by Mr. Magee. Liberty pre-filed Mr. Magee's surrebuttal testimony on August 7, 2018, more than one week prior to the hearing.

Mr. Magee was disclosed as a surrebuttal witness on August 3, the last day to request discovery. Orange Lake did not seek to amend the discovery schedule to obtain discovery regarding Mr. Magee's testimony, did not seek data requests from Mr. Magee, and did not seek to depose him. Instead, on August 8, 2018, Orange Lake filed a motion to strike Mr. Magee's surrebuttal testimony in its entirety and asked the PSC to disallow any rate case expense incurred by Mr. Magee's retention as an expert witness for Liberty's failure to timely disclose him as a witness. On August 9, 2018, Liberty responded that: Mr. Magee's testimony was responsive to specific matters first raised in the rebuttal testimony of other witnesses; no PSC rule prohibited the filing of surrebuttal testimony by a person who had not filed either direct or rebuttal testimony; Orange Lake filed no direct testimony, and only after Orange Lake filed rebuttal testimony was Liberty aware that an expert on the subject matter in the rebuttal testimony would be necessary; and Orange Lake could not claim surprise or prejudice because Ms. Schwartz attached a copy of Mr. Magee's direct testimony from a previous case involving a Liberty affiliate to her direct testimony pre-filed on June 22, 2018.

18

By order dated August 9, 2018, the PSC ruled that because the evidentiary hearing was scheduled to start on August 16, 2018, the PSC would consider Orange Lake's motion to strike Mr. Magee's surrebuttal testimony in the Report and Order. In the PSC Report and Order, the PSC denied Orange Lake's motion to strike Mr. Magee's surrebuttal testimony, finding that Orange Lake had notice of Mr. Magee as a potential witness and of the content of his testimony from Ms. Schwartz's direct testimony and Mr. Magee's attached direct testimony.

Under 4 CSR 240-2.130, which prescribes the rules of evidence in PSC hearings, "[s]urrebuttal testimony shall be limited to material which is responsive to matters raised in another party's rebuttal testimony." 4 CSR 240-2.130.7(D) (Nov. 30, 2015). Mr. Magee's surrebuttal testimony responded to testimony raised in the rebuttal testimony of Staff witness Mr. Murray and Orange Lake expert witness Mr. Stannard, both filed on August 3, 2018.

Orange Lake contends that it was prejudiced by the PSC's denial of the motion to strike. However, the record indicates that while the PSC considered Mr. Magee's testimony regarding a return on equity for Liberty within the range of 9.90% to 10.35%, it also considered the substitute rebuttal testimony of Staff's witness, Mr. Murray, supporting a return on equity of ten percent and the refiled rebuttal testimony of Orange Lake's expert witness, Mr. Stannard, supporting a return on equity with a range of 8% to 9% percent. The PSC awarded a return of equity of 9.75%, the figure that was supported by both Staff and Liberty in the Stipulation; a figure below that recommended by Mr. Magee. Further, only two capital structures were presented to the PSC: Mr. Magee recommended 53% common equity and 47% long-term debt; Mr. Murray recommended 42.83% common equity and 57.17% long-term debt. The PSC concluded that the appropriate capital structure to apply to Liberty to accompany the 9.75% return on equity was 42.83% common equity and 57.17% long-term debt, the figures

recommended by Staff and supported by Orange Lake and agreed to by OPC. Orange Lake has not demonstrated that it was prejudiced by the PSC's refusal to strike Mr. Magee's surrebuttal testimony.

"The [PSC] has broad discretion in evidentiary determinations." *Mo. Pipeline Co.*, 307 S.W.3d at 176. Under the circumstances of this case, the PSC's Report and Order is reasonable in that the PSC did not abuse its discretion in denying Orange Lake's motion to strike Mr. Magee's surrebuttal testimony as a discovery sanction.

Point IV is denied.

## Conclusion

The PSC's Report and Order is lawful and reasonable under section 386.510 and, therefore, is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and Cynthia L. Martin, Judge, concur.