In the MATTER OF the Petition of MISSOURI-AMERICAN WATER COMPANY for Approval to Change its Infrastructure System Replacement Surcharge (ISRS),

and

Missouri Public Service Commission, Respondents,

v.

Office of the Public Counsel, Appellant.

No. SC 95713

Supreme Court of Missouri, en banc.

Opinion issued March 14, 2017

Rehearing Overruled May 30, 2017

The public counsel's office was represented during arguments by Timothy J. Opitz of the public counsel's office in Jefferson City, (573) 751-5324.

The public service commission was represented by Jennifer Leigh Heintz of the commission in Jefferson City, (573) 751-8701.

The water company was represented by Erwin O. Switzer III and John C. Drake of Greensfelder, Hemker & Gale PC in St. Louis, (314) 241-9090, and Dean L. Cooper of Brydon, Swearengen & England PC in Jefferson City, (573) 635-7166.

Laura Denvir Stith, Judge

The Office of the Public Counsel appeals the order of the Public Service Commission (PSC) approving Missouri American Water Company's (MAWC) petition under section 393.1000-393.1006[1] to charge an "infrastructure system replacement surcharge" (surcharge or ISRS) to its St. Louis County customers. Public Counsel argues the PSC had no authority to grant MAWC's petition because the statute authorizes a surcharge only in counties with a population of more than one million persons, a criterion Public Counsel argues St. Louis County no longer met at the time the PSC approved the surcharge. This Court does not resolve the question of whether St. Louis County is required currently to meet the statute's threshold population requirement or whether it is sufficient, as MAWC argues, that St. Louis County concededly met the population requirement when the surcharge statute was adopted.

The propriety of the surcharge was rendered moot once the tariffs were incorporated into MAWC's general rate base during the pendency of this case. The ruling of this Court would not affect the validity of the now superseded surcharge, nor is the validity of the incorporation of the surcharge into the base rate before the Court in this case. Neither does this Court find that the issues presented meet the requirements for an exception to the mootness doctrine. Accordingly, the relief requested is no longer viable, and this case is dismissed as moot.

## I. STATEMENT OF FACTS

In 2003, the Missouri General Assembly enacted sections 393.1000-393.1006, allowing public utility corporations providing water in a county with "a charter form of government and with more than one million inhabitants" to file a petition with the PSC seeking permission to charge customers a surcharge to recover the cost of certain infrastructure improvements. § 393.1003.1, RSMo Supp. 2013.[2] At the time these surcharge statutes were adopted in 2003, only St. Louis County had more than 1 million inhabitants and a charter form of government as required by section 393.1003.1.

The surcharge statutes permit a water corporation to recover qualifying infrastructure costs, without requiring the water corporation to wait for its next general rate case to recover these costs. Recovery is limited to no more than 10 percent of the utility's base revenue level approved by the PSC in the most recent general rate proceeding. § 393.1003.1. A reconciliation must be performed at the end of each 12-month calendar period that a surcharge is in effect. § 393.1006.5(2). If the water corporation seeks adjustment of an existing surcharge, it should "submit the reconciliation and a proposed ISRS adjustment to the [PSC] for approval to recover or refund the difference, as appropriate, through adjustment of an ISRS." Id. Once

---

1. All citations are to RSMo 2003, unless otherwise indicated.

2. Section 393.1003.1 states in relevant part: Notwithstanding any provisions of chapter 386 and this chapter to the contrary, as of August 28, 2003, a water corporation providing water service in a county with a charter form of government and with more than one million inhabitants may file a petition and proposed rate schedules with the commission to establish or change surcharge rate schedules.

Once a water corporation files a petition and application to establish or change a surcharge, the PSC must file an order that will become effective no later than 120 days after the filing of the petition. § 393.1006.2(3). The surcharge shall be approved if the corporation has had a general rate case within the last three years. § 393.1003.2.

a new general rate case is filed and a new base rate approved incorporating the infrastructure improvement costs that are the basis of the surcharge, the surcharge for those costs must be reset at zero. § 393.1006.6(1).[3]

MAWC applied for and was granted its initial authority to collect a surcharge from its customers in St. Louis County in 2012. MAWC since has requested and been given permission to charge other surcharges to its customers to recover other infrastructure costs twice in 2013 and twice in 2014. On February 27, 2015, MAWC filed the petition that is the subject of the current appeal. It sought to recover a 0.7-percent surcharge from its St. Louis County customers for infrastructure replacement costs for the period October 1, 2014 through January 31 2015.

The PSC held a hearing on the petition. Public Counsel and the staff of the PSC opposed the increase because they believed it exceeded the 10-percent statutory cap on the surcharge established by section 393.1003.1. On June 17, 2015, the PSC approved MAWC's proposed surcharge subject to the requirement that, no later than 60 days before it expects to reach the 10-percent cap, MAWC would be required to file a new tariff that would discontinue the surcharge then being approved.

Public Counsel filed an application for rehearing, arguing that the proposed inclusion of certain charges still violated the 10-percent cap. Public Counsel also argued for the first time in its petition for rehearing that the PSC did not have the authority to approve MAWC's surcharge petition because St. Louis County no longer met the requirements in section 393.1003.1.

■ In support, Public Counsel noted that Missouri's population is determined by the latest U.S. census. § 1.100.1.[4] While the 2000 census showed St. Louis County had a population of more than 1 million inhabitants, the 2010 census showed that the population of St. Louis County had fallen to 998,954 inhabitants. Public Counsel argued that a county with only 998,954 inhabitants does not qualify for a surcharge under section 393.1003.1, which by its terms permits a surcharge only for, "as of August 28, 2003, a water corporation providing water in a county with a charter form of government and with more than one million inhabitants."[5]

The PSC denied the petition for rehearing. In so doing, the PSC did not make findings about the population of St. Louis but did state that, "as a county with the specified population at the time the law passed," it believed St. Louis County qualified for the requested surcharge under section 393.1003.1. Public Counsel appealed to the Missouri Court of Appeals.

While that appeal was pending, MAWC filed a separate rate case on July 31, 2015. As part of that rate case, MAWC and PSC

---

**3.** Section 393.1006.6(1) provides, "A water corporation that has implemented an ISRS pursuant to the provisions of sections 393.1000 to 393.1006 shall file revised rate schedules to reset the surcharge to zero when new base rates and charges become effective for the water corporation following a commission order establishing customer rates in a general rate proceeding that incorporates in the utility's base rates subject to subsections 8 and 9 of this section eligible costs previously reflected in an ISRS."

**4.** Missouri courts can take judicial notice of population figures listed in each U.S. census. See § 490.700; see also Varble v. Whitecotton, 354 Mo. 570, 190 S.W.2d 244, 246 (Mo. banc 1945); Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 676 n.9 (Mo. banc 2010) (J. Breckenridge, dissenting).

**5.** The parties agree that MAWC meets the portion of that statute requiring it to be a water corporation operating in a county with a charter form of government.

staff reached a stipulation and agreement establishing a new base rate that incorporated the costs of the MAWC projects for all then-existing surcharges, including the surcharge at issue in this case. MAWC's surcharge was reset to zero as required by section 393.1006.6(1) once the new base rates went into effect. Accordingly, the surcharges that were the subject of the underlying interim rate case were no longer in effect by the time the appellate court issued its opinion. This Court granted transfer after opinion by the court of appeals, pursuant to Mo. Const. article V, section 10.

## II. STANDARD OF REVIEW

 "Pursuant to section 386.510, the appellate standard of review of a [PSC] order is two-pronged: 'first, the reviewing court must determine whether the [PSC]'s order is lawful; and second, the court must determine whether the order is reasonable.'" *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n of State*, 120 S.W.3d 732, 734 (Mo. banc 2003). The PSC's order is presumed valid, and the appellant has the burden of proving that the order is unlawful or unreasonable. *Office of Pub. Counsel v. Missouri Pub. Serv. Comm'n*, 409 S.W.3d 371, 375 (Mo. banc 2013), *quoting, State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n of State*, 120 S.W.3d 732, 734 (Mo. banc 2003).

 "The lawfulness of an order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo." *Id.* (internal quotations omitted). "The decision of the [PSC] is reasonable where the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious or where the [PSC] has not abused its discretion." *State ex rel. Praxair, Inc. v. Missouri Pub. Serv. Comm'n*, 344 S.W.3d 178, 184 (Mo. banc 2011).

## III. WHETHER ST. LOUIS COUNTY QUALIFIES FOR A SECTION 393.1003 SURCHARGE IS MOOT

Section 393.1003.1 authorizes the PSC to approve a surcharge only for those water corporations that meet the requirements of section 393.1003, including that the county in which the water utility operates is a charter county having "more than one million inhabitants." Section 1.100.1 provides that "the population of any political subdivision of the state ... is determined on the basis of the last previous decennial census of the United States." Public Counsel argues that St. Louis County does not now meet this population requirement in that the 2010 census shows the St. Louis County's population at 998,954 inhabitants. MAWC does not deny that the 2010 census gives a population figure of fewer than 1 million inhabitants for St. Louis County. Instead, it argues that the 2010 census population of St. Louis County does not determine whether MAWC currently may seek a surcharge under section 393.1003.1 because section 1.100.2 provides that:

> Any law which is limited in its operation to counties, cities, or other political subdivisions having a specified population ... shall be deemed to include all counties, cities or political subdivisions which thereafter acquire such population ... *as well as those in that category at the time the law passed.*

(Emphasis added). St. Louis County says the italicized language means that so long as St. Louis County met the population requirement at the time section 393.1003.1 was passed—and all parties agree that it did—then it continues to qualify under section 393.1003, and so has a right to charge a surcharge. In other words, "once in, always in."

While the emphasized phrase shows that section 1.100.2 was intended to apply in the first instance both to counties that fell into a population category when a statute

was passed and to those that fall into that category in the future, Public Counsel argues, that says nothing about when and whether a political subdivision can "fall out" of the population category set out in a statute. The cited language simply is silent on the latter issue.

Moreover, in 1971, the legislature amended section 1.100.2 by adding a sentence providing, "Once a city not located in a county has come under the operation of such a law, a subsequent loss of population shall not remove that city from the operation of the law...." There would have been no need to add a sentence stating that a loss of population would not remove St. Louis City ("a city not located in a county") from a population-based statute unless it would have been removed from the scope of such a statute absent the amendment, Public Counsel argues. As the amendment covers only St. Louis City, it gives no "grandfathering" protection to St. Louis County or other political subdivisions, Public Counsel argues, under the maxim *expressio unius est exclusion alterius* (the express mention of one thing implies the exclusion of another).[6]

■ Interesting as this issue may be, this Court cannot reach it. "This Court is obligated, either upon motion of a party or acting *sua sponte*, to examine an appeal for mootness because mootness implicates the justiciability of a controversy and is a threshold issue for appellate review." *Missouri Mun. League v. State*, 465 S.W.3d 904, 906 (Mo. banc 2015) (internal quotations and alterations omitted). This is true even if the case was not moot at its inception. *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001). Tariffs that are superseded by subsequently filed tariffs are generally moot and are not considered on appeal because superseded tar-

iffs cannot be corrected retroactively. *State ex. rel. Praxair, Inc. v. Pub. Serv. Comm'n*, 328 S.W.3d 329, 334 (Mo. App. 2010).

■ Under section 393.1000(3), when a utility company seeks to recover costs of an infrastructure system replacement project by a surcharge, those costs cannot also be recovered as part of the company's general base rate. After the company has its next general rate case, however, those costs must be incorporated in the utility's base rate and can no longer provide the basis for a surcharge. *§ 393.1006.6(1)*. The surcharge then must be reset to zero.

That is what has occurred here. After the surcharge that is the subject of this proceeding was approved, and while that approval was on appeal, MAWC filed for and was granted a general base rate increase that included the infrastructure costs that had been the subject of the surcharge at issue here. At that point, the amounts that were previously part of the disputed surcharges were included in the new base rate.

This appeal involves only Public Counsel's challenge to the surcharge. Because the costs that formed the basis of the disputed surcharge have been incorporated into MAWC's base rate, the base rate supersedes the surcharge. The surcharge has been reset to zero, and superseded tariffs cannot be corrected retroactively. *Praxair*, 328 S.W.3d at 334. The question of whether MAWC could charge a surcharge under section 393.1003 in light of the reduction in the population of St. Louis County to fewer than 1 million inhabitants as shown in the 2010 census therefore has become moot.

■ Public Counsel acknowledges these facts but argues that this case falls within

---

6. *See Westwood Country Club v. Dir. of Revenue*, 6 S.W.3d 885, 887 n.4 (Mo. 1999), *citing*, BLACK'S LAW DICTIONARY 581 (6th ed. 1990);

*Brackett v. Easton Boot & Shoe Co.*, 388 S.W.2d 842, 848 (Mo. 1965).

the public interest exception to the mootness doctrine. Under this very narrow exception, a court may consider an otherwise moot case if it "presents an issue that (1) is of general public interest and importance, (2) will recur and (3) will evade appellate review in future live controversies." *Gurley v. Missouri Bd. of Private Investigator Exam'rs*, 361 S.W.3d 406, 414 (Mo. banc 2012) (citations omitted). Public Counsel argues this exception applies here.

■ Insofar as this appeal involves the meaning and application of section 393.1003, Public Counsel has failed to show that the issue it raises about whether MAWC exceeded the 10-percent surcharge threshold under section 393.1003 is of general interest or that it will recur. To the contrary, Public Counsel argues only St. Louis County has ever met the qualifications set out in section 393.1003 and even it no longer does so. Taking these allegations as true, the alleged error is not of general interest and is unlikely to recur.

■ Insofar as this appeal involves the broader issue whether, under section 1.100.2, a political subdivision continues to be subject to a population-based statute even if its population later grows or shrinks outside the specified population

threshold, the Court agrees that this issue is of general public interest and importance in that dozens if not hundreds of statutes use population-based criteria. Many of those statutes use the same "one million inhabitants" population criterion at issue here.[7] Many other statutes set out different population criteria affecting various cities and counties, large and small, that potentially also could be affected if those cities or counties grow or shrink out of the population criteria set out in the statutes.[8]

This does not mean that this issue falls within the public interest exception, however. Precisely because of the general interest and widespread effect should this Court hold that a political subdivision can fall out of the scope of a population statute, it may well be that the legislature will address and clarify the meaning of section 1.100.2 before this issue recurs. This would make it unnecessary for this Court to address the issue and would avoid the parade of horribles that it is alleged would occur were this Court to hold that St. Louis County or other political subdivisions were no longer subject to statutes that have governed them for years if not decades.

But, regardless of whether the legislature acts, the very fact that so many stat-

7. *See, e.g.,* §§ 67.1800-67.1822; §§ 99.915-99.1060; §§ 99.939.1; § 227.107.2 (authorizing additional design-build contracts for Route 364); § 163.011 (providing methodology for calculating state aid to public schools); § 99.820.3 (allowing any city in the county to create a commission).

8. *See, e.g.,* § 160.055 (permitting certain school districts to "establish and enforce" age-limit regulations for prekindergarten, kindergarten, and summer-school programs); § 84.870 (requiring police officers in certain cities be given twenty-four holidays annually); § 57.570 (permitting the counties in certain districts to create a county highway patrol); § 67.1360 (authorizing a tourism tax for 36 categories based on population); § 32.117 (allocating tax credits to homeless assistance

projects serving low-income persons in certain cities); § 87.615 (allowing beneficiaries of firefighters certain compensation and benefits); § 221.020 (providing exception for certain counties to share custody of county jails with sheriff); § 67.282 (permitting public street use for construction traffic in certain counties); §§ 311.174-311.178 (creating permits extending hours for certain businesses); § 178.716, RSMo 2007 (permitting vocational school districts); §§ 70.330-70.360 (giving cities with more than 100,000 inhabitants the power to contract for purpose of establishing drainage districts for flood protection); § 483.312 (providing guidelines for depositing funds in circuit court registries of certain counties).

utes contain population criteria and that so many cities, counties and other political subdivisions may be affected means that it is unlikely that the meaning of section 1.100.2 will evade review. The third criterion for invoking the public interest exception to the mootness doctrine, therefore, is not met.

## IV. CONCLUSION

Because the surcharge is no longer in effect and no effective relief may be granted, the issue raised on this appeal as to whether MAWC can utilize the surcharge provisions of section 393.1003 is moot. The requirements of the public interest exception to the mootness doctrine have not been satisfied. For these reasons, the appeal is dismissed as moot.

Breckenridge, C.J., Fischer, Draper, Wilson and Russell, JJ., concur.

