

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE MATTER OF THE JOINT APPLICATION OF INVENERGY TRANSMISSION LLC, INVENERGY INVESTMENT COMPANY LLC, GRAIN BELT EXPRESS CLEAN LINE, LLC AND GRAIN BELT EXPRESS HOLDING LLC FOR AN ORDER APPROVING THE ACQUISITION BY INVENERGY TRANSMISSION LLC OF GRAIN BELT EXPRESS CLEAN LINE LLC, | |
| **Respondents,** | **WD83236** |
| EASTERN MISSOURI LANDOWNERS ALLIANCE DBA SHOW ME CONCERNED LANDOWNERS; AND JOSEPH AND ROSE KRONER, | **OPINION FILED:** **JULY 7, 2020** |
| **Appellants,** | |
| v. | |
| PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, | |
| **Respondent.** | |

Appeal from the Public Service Commission of the State of Missouri

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Edward R. Ardini, Jr., Judge, W. Douglas Thomson, Judge

Eastern Missouri Landowners Alliance d/b/a Show Me Concerned Landowners ("Show

Me") and Joseph and Rose Kroner ("the Kroners") ("Appellants" collectively) appeal the

September 11, 2019, amended report and order issued by the Public Service Commission of the State of Missouri ("Commission") approving the sale of Grain Belt Express Clean Line LLC ("Grain Belt") to Invenergy Transmission LLC ("Invenergy"). On appeal, Appellants contend the Commission lacked statutory authority under Section 393.190[1] to approve the sale of Grain Belt to Invenergy because, 1) Grain Belt is not an "electrical corporation" and, 2) even if Grain Belt is an electrical corporation, the sale does not transfer any assets of Grain Belt which are "necessary or useful in the performance of its duties to the public." We affirm.

## Factual and Procedural Background

### Parties

Grain Belt is a limited liability company organized under the laws of Indiana. It is a wholly-owned subsidiary of Grain Belt Express Holding, LLC (GBE Holding). GBE Holding is a wholly-owned subsidiary of Clean Line Energy Partners. Grain Belt was formed for the purpose of developing and constructing the Grain Belt Express project, comprising a transmission line and related transmission facilities starting in western Kansas, crossing through Missouri, and ending in Indiana.

Invenergy Investment Company (Invenergy Investment) develops, owns, and operates large scale renewable and other clean energy generation, energy storage facilities, and electric transmission facilities. Its areas of expertise include project development, permitting, transmission, interconnection, energy marketing, finance, engineering, project construction, operations, and maintenance. Invenergy is a subsidiary of Invenergy Investment.

---

[1] All statutory references are to the Revised Statutes of Missouri, 2016, unless otherwise noted.

Missouri Joint Municipal Electric Utility Commission (MJMEUC) is a body corporate and politic of the State of Missouri, organized as a joint municipal utility commission pursuant to Section 393.700 et seq., with authority to exercise the public powers of a political subdivision of Missouri for the benefit of the inhabitants of municipalities jointly contracting to establish MJMEUC. Seventy Missouri municipalities are currently members of MJMEUC. MJMEUC is a party to a transmission service agreement with Grain Belt to utilize the Grain Belt Express project to deliver power to MJMEUC members.

Show Me is a non-profit corporation organized under Missouri law. It was created April 4, 2014, and most of its members live along or near the proposed route of the Grain Belt Express project.

The Kroners are a married couple that jointly own a farm in Randolph County, Missouri. The Grain Belt Express transmission line would pass across their farm.

The Commission is the state agency responsible for the regulation of investor-owned public utilities, including electrical corporations, in Missouri.

Procedural History

Grain Belt, on behalf of itself and GBE Holding, and Invenergy, on behalf of itself and Invenergy Investment, filed a joint application under Section 393.190.1 asking the Commission to approve a transaction in which Invenergy would acquire the ownership interest in Grain Belt from GBE Holding. The application was filed February 1, 2019. MJMEUC supported the acquisition. The Appellants did not. In addition to the motions to intervene of Show Me, the Kroners, and MJMEUC, the Commission granted motions to intervene by other entities not a party to this appeal, including Renew Missouri Advocates, doing business as Renew Missouri, and the Missouri

3

Landowners Alliance. The Commission's Staff and the Office of the Public Counsel also participated in the proceeding.

The Commission held an evidentiary hearing on April 23, 2019. During the evidentiary hearing, the parties presented evidence related to whether the Commission had jurisdiction and statutory authority under Section 393.190 to approve the sale of Grain Belt to Invenergy, whether Invenergy's acquisition of Grain Belt was detrimental to the public interest, and whether the Commission should condition any approval of the acquisition and, if so, with what conditions.

The Commission reviewed the acquisition proposed in a Membership Partnership Agreement entered into by Invenergy and GBE Holding on November 9, 2018. Under the agreement, Invenergy would acquire the ownership interest in Grain Belt from GBE Holding. The agreement lists the approval of the Commission as a condition precedent to closing the acquisition.

The Grain Belt Express project includes a multi-terminal ±600 kilovolt high-voltage direct current (HVDC) transmission line, HVDC converter station, and associated transmission facilities. The project will start in Kansas and terminate in Indiana. It is sited to cross eight Missouri counties: Buchanan, Clinton, Caldwell, Carroll, Chariton, Randolph, Monroe, and Ralls. The Grain Belt Express project covers approximately 780 miles, and the project will primarily use a pole design which has a smaller footprint than traditional alternating current transmission lines. The structures will occupy ten acres for the entire state of Missouri. A converter station capable of injecting 500 megawatts into Missouri will be built.

Grain Belt, GBE Holding, and Invenergy entered into a related Development Management Agreement. The Agreement provides development funding for the Grain Belt Express project through the projected closing date of the Membership Interest Purchase Agreement.

The Commission found that the acquisition of Grain Belt by Invenergy benefits the Grain Belt Express project because Invenergy Investment has significantly more cash than Grain Belt's current parent company, and Invenergy has a greater book value. Combined with Invenergy's significant experience with large-scale renewable energy projects, the acquisition will promote the completion of the Grain Belt Express project. Invenergy has agreed to ensure that Grain Belt abides by the conditions placed upon Grain Belt in the order granting a certificate of convenience and necessity to construct the Grain Belt Express project in Missouri, including the landowner protocol.

The Commission concluded that Grain Belt was an electrical corporation and public utility subject to the Commission's oversight. The Grain Belt Express project will deliver energy to Missouri wholesale customers, who will provide that energy to their retail customers. The Commission found that, Grain Belt will not selectively sell to particular retail customers, but the electricity it transmits will serve the general public.

Grain Belt owns all of the assets comprising the Grain Belt Express project. Grain Belt currently possesses thirty-nine easements. The thirty-nine easements will be necessary for the development of the Grain Belt Express project. Grain Belt also owns permits and engineering work as part of the Grain Belt development assets. Grain Belt possesses cash and cash equivalents to be used to continue the Grain Belt Express project. The Commission concluded that Grain Belt's easements and cash on hand are "electric plant" under Section 386.020(14) because they are "to be used" for the transmission of electricity.

The Commission also found that there has been a division of regulatory authority between the federal government and the states since the Federal Power Act was enacted in 1935. Grain Belt's interstate wholesale transmission rates will be governed by the Federal Energy Regulatory

5

Commission. Under federal law, Grain Belt must allocate transmission capacity in a non-discriminatory manner. Federal law does not govern whether Grain Belt can be acquired by Invenergy. The Commission found that its authority to approve the transaction was not preempted by federal law.

The Commission concluded that the proposed acquisition of Grain Belt by Invenergy involved assets that are "necessary or useful in the performance of its duties to the public" under Section 393.190. Grain Belt's easements, cash, and engineering work are all necessary to build the structures that will allow Grain Belt to transmit electricity in the future. Grain Belt's easements are active and in effect, and are going to be needed for the Grain Belt Express project. Grain Belt's current cash and cash equivalents are sufficient to continue the Grain Belt Express project, but not complete it.

The Commission issued its amended report and order on September 11, 2019, approving the acquisition of Grain Belt by Invenergy under Section 393.190.1.

Appellants filed a joint application for rehearing of the Commission's amended report and order. The Commission denied Appellants' application for rehearing on September 24, 2019. This appeal follows.

**Standard of Review**

Pursuant to section 386.510, the appellate standard of review of a Public Service Commission order is two-pronged: first, the reviewing court must determine whether the Commission's order is lawful; second, the court must determine whether the order is reasonable. *Matter of Missouri-American Water Company,* 516 S.W.3d 823, 827 (Mo. banc 2003) (internal citations omitted). We presume the Commission's order is valid, and the appellant has the burden of proving that the order is unlawful or unreasonable. *Id.* We review questions of law *de novo*.

6

*Id.* An order is lawful if statutory authority for its issuance exits. *Id.* An order is reasonable if supported by substantial, competent evidence on the whole record and is not arbitrary, capricious, or an abuse of discretion. *Id.* "We consider the evidence, along with all reasonable supporting inferences, in the light most favorable to the Commission's order." *State ex rel. Public Counsel v. Missouri Public Service Com'n*, 289 S.W.3d 240, 246-247 (Mo. App. W.D. 2009). If the evidence supports two conflicting conclusions, we defer to the Commission's factual findings. *Id.* at 247. Pursuant to Section 386.430, the burden of proof is on the party seeking to set aside the Commission's order to show by clear and satisfactory evidence that the order is unlawful or unreasonable.

**Point I**

In Appellants' first point on appeal, they contend the Commission erred in approving the sale of Grain Belt to Invenergy, arguing that Grain Belt is not an "Electrical Corporation" -- a prerequisite for approval of the sale under Section 393.190.

Appellants acknowledge that the Eastern District recently found that Grain Belt is an "electrical corporation" and "public utility" in *Missouri Landowners Alliance v. Public Service Commission*, 593 S.W.3d 632 (Mo. App. 2019). The Commission had granted Grain Belt a certificate of convenience and necessity, effective April 19, 2019, under Section 393.170.1. Appellant Show Me, along with other intervenors in the construction certificate case, appealed the Commission's order granting the construction certificate. In that appeal, heard by the Eastern District, Appellant Show Me argued that Grain Belt is not an "electrical corporation." On December 17, 2019, the Eastern District affirmed the Commissions' finding that Grain Belt is an electrical corporation. On March 17, 2020, the Missouri Supreme Court denied Show Me's application to transfer. Appellants, nevertheless, request this court "review the issue raised in Point

7

I anew." In their Reply Brief, Appellants argue in response to Respondents' contention that collateral estoppel bars this claim that, while Show Me was a party to the appeal which resulted in the Eastern District's decision, the Kroners were not and have not yet had the opportunity to question the status of Grain Belt as an electrical corporation.

"Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that already has been decided in a different cause of action." *Brown v. Carnahan*, 370 S.W.3d 637, 658 (Mo. banc 2012).

> Before giving preclusive effect to a prior adjudication under collateral estoppel principles, the Court must consider four factors: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. The doctrine of collateral estoppel will not be applied where to do so would be inequitable. Each case must be analyzed on its own facts.

*James v. Paul*, 49 S.W.3d 678, 682-683 (Mo. banc 2001). The Kroners argue that, because they were not parties to the initial appeal in the Eastern District, they were not in privity with Show Me during that proceeding and did not have a full and fair opportunity to litigate the issues in the prior proceeding. They further assert that, because the Commission allowed their intervention in this case, by implication the Commission found they were not in privity with Show Me in *Missouri Landowners Alliance* because the Commission allowed their intervention here in spite of Show Me also being allowed intervention. The Kroners suggest that this shows the Commission found that Show Me inadequately represented the Kroners' interests in the *Missouri Landowners Alliance* appeal. We disagree.

The Kroners requested intervention in this case pursuant to 20 CSR 4240-2.075. This regulation provides:

8

(3) The commission may grant a motion to intervene or add new member(s) if –

    (A) The proposed intervenor or new member(s) has an interest which is different from that of the general public and which may be adversely affected by a final order arising from the case; or

    (B) Granting the proposed intervention would serve the public interest.

20 CSR 4240-2.075(3). Hence, unlike "Intervention of Right" under Missouri Supreme Court Rule 52.12(a),[2] this standard for intervention does not provide that the party requesting intervention must have an interest different from, or inadequately represented by, *other parties*. Here, an intervenor's interest must be different from the *general public*, or their intervention must serve the public interest. Given this standard, we cannot agree with Appellants that the Commission, "in effect found there was no privity between the Kroners and Show Me in the case below" and "by implication," found the Kroners' interests inadequately represented by Show Me (and another landowner group) in *Missouri Landowners Alliance* when it allowed intervention in this case.

> A privy, in the context of collateral estoppel, is one so related by identity of interest with the party to the judgment that such party represented the same legal right. Parties are in privity for collateral estoppel purposes if the interests of the non-party are so closely related to the interests of the party, that the non-party can be fairly considered to have had his day in court. Whether parties are in privity depends mostly on their relationship to the subject matter of the litigation.

*Gamble v. Browning*, 379 S.W.3d 194, 199 (Mo. App. 2012) (internal quotation marks and citations omitted). The issue jointly raised by Appellant Show Me and Appellant Kroner in Point I of this

---

[2] Rule 52.12(a) provides:

> **Intervention of Right**. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

appeal is the exact issue raised by Show Me in *Missouri Landowners Alliance v. Public Service Commission*, i.e., whether Grain Belt qualified as an "electrical corporation" such that the Commission had any statutory authority to act on Grain Belt's requests.

The Kroner's Application to Intervene in this case states that they are owners of a farm located in Randolph County, Missouri, and that Grain Belt Express supplied information to them indicating that the proposed transmission line would pass directly over their farm, and cross their neighbors' property within 500 feet of their residence. The application states that the Kroners had "long opposed" the proposed Grain Belt project and expected to oppose the joint Application filed in this case by Grain Belt and Invenergy.

In the case before us, we granted Appellants' request for this court to take judicial notice of the Report and Order on Remand issued by the Commission on March 20, 2019, in Case number EA-2016-0358, the *Missouri Landowners Alliance* case. In the Report and Order on Remand, the Commission states that, on August 30, 2016, Grain Belt filed an application with the Commission for a certificate of convenience and necessity to construct, own, operate, control, manage and maintain a high voltage, direct current transmission line and associated facilities within, among other counties in Missouri, Randolph County. The Report and Order on Remand states that, the Commission issued notice of the application and *provided an opportunity for interested persons to intervene*. Further, the Commission conducted local public hearings for members of the general public in each of the eight counties where the proposed transmission line would be located, including Randolph County. The record in the *Missouri Landowners Alliance* case reflects that, Mr. and Mrs. Kroner both appeared and individually spoke at a December 8, 2016, hearing in that matter, expressing their opposition to the Grain Belt project. Mr. Kroner expressly objected to the project on the grounds that the project did not fit the criteria of a "public utility."

10

We find that the Kroners had the same legal interest as that represented by Appellant Show Me and other appellants in *Missouri Landowners Alliance*, with the Kroners' interests so closely related to the interests of those appellants that the Kroners can be fairly considered to have had their day in court with regard to the issue raised in Point I. The Kroners were involved in disputing the Grain Belt project before the "public utility"/ "electrical corporation" issue in *Missouri Landowners Alliance* was ever formally presented to the Eastern District. The Kroners do not contend that they were denied the right to intervene in Case number EA-2016-0358 or participate in litigation of the issues in dispute which led to the Eastern District's decision. While the Kroners apparently chose not to participate in that litigation in an individual capacity, nothing in the record before us suggests that their interests were not fully represented, or that they did not have a full and fair opportunity to litigate the issues had they desired.

Recognizing that *Missouri Landowners Alliance* addresses the same issues and facts as presented by Appellants in Point I, Appellants ask us to review the issue "anew" and reach a contrary result. We decline. Appellants are bound by the Eastern District decision; Show Me was a party to that decision and the Kroners were in privity with Show Me. While it does not appear that Invenergy was a party in that case, Invenergy is nevertheless also bound by the decisions the court made regarding Grain Belt, the entity Invenergy intends to acquire.[3] Our Missouri Supreme Court declined on March 17, 2020, to review this issue anew, and we do the same.

Appellants' first point on appeal is denied.

---

[3] "The principle of non-mutual collateral estoppel, as adopted in Missouri, permits use of a prior judgment to preclude relitigation of an issue even though the party asserting collateral estopped was not a party to the prior case." *James*, 49 S.W.3d at 684. Invenergy's assertion of collateral estoppel here is in the form of "defensive collateral estoppel" wherein Invenergy is attempting to prevent Appellants from relitigating a fact decided against them in earlier litigation and on which they have the burden of proof in this appeal. *Id.* at 685. Allowing defensive use of non-mutual collateral estoppel serves to prevent the potential of collusive litigation and to promote finality, consistency, and judicial economy. *Id.* at 688.

**Point II**

In Appellants' second point on appeal, they contend the Commission erred in approving the sale of Grain Belt to Invenergy because, even if Grain Belt is an electrical corporation, the Commission lacked statutory authority "and thus subject matter jurisdiction" to approve the sale because the sale does not transfer any assets of Grain Belt which are "necessary or useful in the performance of its duties to the public" -- a prerequisite for Commission approval of the sale under Section 393.190.1.

We find that the Commission had "subject matter jurisdiction" to consider the sale pursuant to Section 386.250 which, as relevant here, states:

> The jurisdiction, supervision, powers and duties of the public service commission herein created and established shall extend under this chapter:
>
> (1) To the manufacture, sale or distribution of gas, natural and artificial, and electricity for light, heat and power, within the state, and to persons or corporations owning, leasing, operating or controlling the same; and to gas and electric plants, and to persons or corporations owning, leasing, operating or controlling the same[.]

What Appellants really argue is that the Commission improperly defined Grain Belt's assets under Section 393.190.1 and, therefore, should not have approved Grain Belt's sale to Invenergy. *See also*, *MCI Metro Access Transmission Servs., Inc. v. City of St. Louis*, 941 S.W.2d 634, 644-645 (Mo. App. 1997) (citing Section 392.300.1, the equivalent of Section 393.190.1 applicable to telecommunications companies, and finding the Commission has primary jurisdiction to decide what is "necessary or useful" for the provision of service). As relevant to the issue raised by Appellants in Point II, Section 393.190.1 states:

> No … electrical corporation … shall hereafter sell … or otherwise dispose of or encumber the whole or any part of its franchise, works or system, necessary or

12

useful in the performance of its duties to the public … without having first secured from the commission an order authorizing it to do so.

Appellants' argue that, because Grain Belt cannot transmit electrical energy to customers until the line is constructed, and the line will not be finished for several years, Grain Belt's assets are not *currently* necessary or useful in supplying electric service to the public. Consequently, the Commission had no statutory authority to grant approval of the sale of Grain Belt to Invenergy.

An "Electric plant" is defined in Section 386.020(14) as including all real estate, fixtures, and personal property operated, controlled, owned, used *or to be used* for or in connection with or to facilitate the generation, transmission, distribution, sale or furnishing of electricity for light, heat or power. Under Section 393.190.1, an electrical corporation cannot sell an "electric plant" without Commission approval if such is necessary or useful in the performance of the corporation's duties to the public. Appellants argue that the Commission erred in authorizing sale of Grain Belt's electric plant because, to be "necessary or useful in the performance of its duties to the public," Grain Belt's assets must be currently supplying electric service to the public. Yet, the plain language of Section 386.020(14) reveals that if an electric plant owned by an electrical corporation is *to be used for* or in connection with or to facilitate the generation, transmission, distribution, law or furnishing of electricity for light, heat, or power, and such is necessary or useful in the performance of the corporation's duties to the public, pursuant to Section 393.190.1, it cannot be

13

sold without Commission approval.  Consistent with the Commission's determination in this case,[4]

*Missouri Landowners Alliance* conclusively determined:

> Here, the proposed Grain Belt transmission line and converter station fall squarely within the definition of 'electric plant' under Section 386.020(14) because they are examples of 'fixtures' and/or 'personal property.'  Furthermore, Grain Belt's 39 transmission line easements with Missouri landowner[s] are on 'real estate … to be used' for or in connection with transmission of electrical energy.  That personal property and real estate therefore fall under the definition of 'electric plant.'
> …
> Additionally, Grain Belt currently owns cash on hand.  Grain Belt's cash on hand falls within the definition of 'electric' plant because it is 'personal property … *to be used* … in connection with or to facilitate the … transmission … of electricity' and because Grain Belt will use its cash on hand to construct its transmission line and converter station.  Section 386.020(14).  Therefore, Grain Belt is an electrical corporation within the meaning of Section 386.020(15), and it is subject to the jurisdiction of the Commission.

593 S.W.3d at 645 (emphasis original).  The Eastern District discussed that,

> The word 'used' indicates current use, while the phrase 'to be used' indicates future use.  The idea that property 'to be used' indicates future use is further reflected in the requirement that authority to begin construction of electric plant be exercised 'within a period of two years from the grant thereof.'  Section 393.170.3.

*Id.* at 644-645.

The sale of Grain Belt to Invenergy included Grain Belt's electric plant.  As such, the sale involved the sale of franchise, works or system, necessary or useful in the performance of Grain Belt's duties to the public.  We find that the Commission had the statutory authority to approve the sale of Grain Belt to Invenergy.  Appellants' second point on appeal is denied.

---

[4] Here, the Commission found that the "easements, the cash, and even the engineering work are all necessary to build the structures that allow Grain Belt to transport electricity in the future, and thus bring the transaction within the authority of the Commission."  The Commission found that Grain Belt's thirty-nine easements with Missouri landowners are interests in real estate, and that those easements will be necessary for the development of the Grain Belt Express Project.  The Commission found that Grain Belt's cash on hand to continue the Grain Belt Express Project is personal property.  The Commission found that, under the statute, these qualify as "electric plant" and Grain Belt owns them.  The Commission further found that, Section 386.010(14) does not require that the electrical plant be *currently used* to transmit electricity for power to qualify as an "electric plant."

14

**Conclusion**

The Commission's amended report and order is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

15